Paul BARR et al., Petitioners,

v.

Milton Johnny BERNHARD et al., Respondents.

No. B–6698.

Supreme Court of Texas.

Feb. 15, 1978.

Rehearing Denied April 5, 1978.

Groce, Locke & Hebdon, Edward P. Fahey and J. Michael Myers; Clark, Thornton & Summers, Robert Summers, San Antonio, for petitioners.

Bob Gibbins, Bill Zook, Austin, for respondents.

McGEE, Justice.

This is a summary judgment case involving the liability of the Kerrville Independent School District and certain of its individual employees for personal injuries sustained by Mark William Bernhard, a student at Tivy High School of the Kerrville Independent School District. The trial court granted the School District's plea in bar on the basis of governmental immunity and granted the individual defendants' motion for summary judgment. The court of civil appeals affirmed the holding of the trial court regarding the School District, but reversed the judgment granting the individual defendants' motion for summary judgment and remanded the cause to the trial court for a new trial. 547 S.W.2d 685. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

Mark Bernhard was a student at Tivy High School and was enrolled in a vocational-agricultural course that called for him to raise a calf in order to satisfy the course requirements. The School District maintained a 73-acre facility, hereinafter referred to as the Ag Farm, where the students in the course could keep or raise their animals. It was not mandatory that the students keep their animals at the Ag Farm; but they could do so after obtaining permission from their instructors.

The Saturday on which the accident occurred, Mark was at the Ag Farm with his parents and some friends to care for his calf. There were no school personnel present at that time. After weighing his calf, Mark and his friends attempted to lead

the calf back into an old army barracks that was used as a barn. The calf struck a metal pole which supported a gable roof over the entrance to the barn. The pole gave way and the roof collapsed, pinning Mark underneath the structure and severely injuring him.

Bernhard brought suit against the Kerrville Independent School District and certain of its individual employees alleging that they were negligent in several respects: (1) by failing to properly inspect the facility; (2) by failing to maintain or supervise the facility; and (3) by allowing the facility to be used while in a condition of disrepair.

## THE LIABILITY OF THE SCHOOL DISTRICT

■ The law is well settled in this state that an independent school district is an agency of the state and, while exercising governmental functions, is not answerable for its negligence in a suit sounding in tort. *See, e. g., Braun v. Trustees of Victoria Independent School District,* 114 S.W.2d 947 (Tex.Civ.App.—San Antonio 1938, writ ref'd); *Coleman v. Beaumont Independent School District,* 496 S.W.2d 245 (Tex.Civ. App.—Beaumont 1973, writ ref'd n. r. e.). The Texas Tort Claims Act was enacted in 1970, and Section 3 of that Act provided for waiver of governmental immunity for the use of publicly-owned motor vehicles, prem-

ises defects, and injuries arising out of conditions or use of property.[1] With respect to the liability of a school district, however, the Legislature provided for a more limited waiver of immunity. Section 19A of the Act states that a school district's liability is limited to causes of action arising from the use of motor vehicles.

Bernhard seeks to avoid the preclusive effect of section 19A on his cause of action against the School District by arguing that this Court should abolish the provisions of section 19A that restrict a school district's amenability to suit. He also argues that the School District waived any governmental immunity by the purchase of general liability insurance.

■ By his first argument, he urges this Court to judicially abrogate section 19A and place school districts on the same basis as other governmental units in waiving their immunity to the extent provided for under Section 3 of the Act. We recently held that any waiver of governmental immunity is a matter to be addressed by the Legislature, *Lowe v. Texas Tech University,* 540 S.W.2d 297, 298 (Tex.1976), and we are still of the opinion that it is the proper forum for such action.[2]

■ Bernhard then argues that the School District waived its governmental immunity by purchasing liability insurance.[3]

1. Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 3 (Supp.1976–1977) in pertinent part states:
   "Each unit of government in the state shall be liable for money damages for property damage or personal injuries or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, other than motor-driven equipment used in connection with the operation of floodgates or water release equipment by river authorities created under the laws of this state, under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state, or death or personal injuries so caused from some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person,

   would be liable to the claimant in accordance with the law of this state. . . . ."

2. This approach seems especially appropriate with regard to section 19A since it was a significant concession by the proponents of the Tort Claims Act in return for the support of the Act by school authorities. *See* Greenhill & Murto, *Governmental Immunity,* 49 Texas L.Rev. 462, 468 (1971). Further, the abolition of section 19A was considered by the 63rd Legislature in 1973 and rejected when it failed to enact House Bill No. 441, section 9 of which called for the repeal of Section 19A of the Tort Claims Act.

3. The School District was authorized to purchase liability insurance under the provisions of the Tort Claims Act. Tex.Rev.Civ.Stat.Ann. art. 6252–19, § 9 (1970) provides in pertinent part:
   "[A]ll units of government are hereby expressly authorized to purchase policies of

He points out that several states have adopted this "insurance-waiver theory" in order to relieve unjust results that are sometimes produced by the doctrine of governmental immunity. We are not persuaded by this argument.

In support of his argument, Bernhard cites the case of *Christie v. Board of Regents*, 364 Mich. 202, 111 N.W.2d 30 (1961). There was no direct holding by the Michigan Supreme Court in that case that the governmental unit had waived its immunity by the purchase of the insurance. That court merely held that a trial court did not abuse its discretion by requiring the production of a liability insurance policy obtained by the Board of Regents as possible admissible evidence that the Board had waived its immunity to the extent of the policy limits. In fact, subsequent Michigan decisions have held that there is no waiver of immunity when a governmental unit purchases liability insurance. *Sayers v. School District No. 1*, 366 Mich. 217, 114 N.W.2d 191 (1962); *Pichette v. Manistique Public Schools*, 50 Mich.App. 770, 213 N.W.2d 784 (Mich.Ct. App.1973); *Branum v. State of Michigan*, 5 Mich.App. 134, 145 N.W.2d 860 (Mich.Ct. App.1966).

Bernhard also relies on the case of *Schoening v. United States Aviation Underwriters*, 265 Minn. 119, 120 N.W.2d 859 (1963). We do not consider this decision to be in point either. In *Schoening*, certain aircraft owners sued the municipality and its insurer for damages to the aircraft resulting from the collapse of a hangar at the municipal airport. Governmental immunity was held not to be a defense to the action to the extent that the municipality had purchased liability insurance to cover such risks. *Id.* at 865. In reaching its decision,

the court relied on a statute that explicitly stated that governmental immunity was waived to the extent of the coverage of the liability insurance policy that was purchased. *See* Minn.Stat.Ann. § 466.06 (1977).

As was the situation in Minnesota, the waiver of governmental immunity by statutes expressing in clear and unambiguous terms that such immunity is waived only to the extent of the liability insurance purchased appears to be the trend among those states adopting the "insurance-waiver theory." *Holmes v. School Board*, 301 So.2d 145 (Fla.D.Ct.App.1974) (construing Fla.Stat. Ann. § 234.03(4) (West's 1977)); *Longpre v. Joint School District No. 2*, 151 Mont. 345, 443 P.2d 1 (1968); *Clary v. Alexander County Board of Education*, 286 N.C. 525, 212 S.E.2d 160 (1975) (construing N.C.Gen.Stat. § 115–53 (1975)). Therefore, Section 9 of the Texas Tort Claims Act is distinguishable in this respect since the language of that provision merely *authorizes* units of government to purchase liability insurance; no language is contained therein that expresses an intent on the part of the Legislature to waive governmental immunity by the purchase of liability insurance.[4]

Moreover, Texas cases dealing with other governmental agencies have rejected the argument that the act of procuring liability insurance waives any governmental immunity. In *Sears v. Colorado River Municipal Water District*, 487 S.W.2d 810 (Tex.Civ. App.—Eastland 1972, writ ref'd n. r. e.) the plaintiffs sued the water district for damages resulting from a fire that the water district started on lake property. The trial court rendered summary judgment in favor of the water district based on the district's claim of governmental immunity. The

insurance providing protection for such units of government, their officers, agents and employees *against claims brought under the provisions of this Act . . . .*"

4. In 1973, the 63rd Legislature also considered this question in House Bill No. 441. Section 3 of that unsuccessful bill sought to amend Section 9 of the Tort Claims Act by expressly waiving governmental immunity to the extent of the risk covered by the liability insurance purchased and to the extent of the limits of the

policy's coverage. Apparently, one of the only examples where the Legislature has expressly waived governmental immunity because of the purchase of liability insurance is found in the Texas Education Code where it states that state institutions of higher education that operate nuclear reactors may purchase liability insurance up to the amount of $250,000 and the insurer may not invoke the defense of governmental immunity. Tex.Educ.Code Ann. § 51.- 901 (1972).

plaintiffs asserted that the district had waived its defense of governmental immunity because it had procured liability insurance. The court of civil appeals held that the trial court was correct in rendering summary judgment in favor of the district and stated, in accordance with prior cases, that "the all-important factor is that the procuring of indemnity insurance cannot create liability where none exists in the absence of such insurance." *Id.* at 811; *see Watkins v. Southcrest Baptist Church*, 399 S.W.2d 530, 534–35 (Tex.1966); *Jones v. Texas Gulf Sulphur Co.*, 397 S.W.2d 304, 307 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.); *Texas Prison Board v. Cabeen*, 159 S.W.2d 523, 527 (Tex.Civ.App.—Beaumont 1942, writ ref'd).

■ Therefore, we hold that the School District is immune from liability under the doctrine of governmental immunity, and the trial court was correct in granting its plea in bar.

### THE LIABILITY OF THE INDIVIDUAL DEFENDANTS

This case involves the initial interpretation of Section 21.912 of the Texas Education Code (Supp.1976–1977) by this Court. That section reads as follows:

"(a) The board of trustees of each school district within this state shall adopt policies specifying the duties of each of its professional positions of employment. The board of trustees shall assign positions of employment earned under the minimum foundation program to meet the specific needs of the district.

"(b) No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, *except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students.*

"(c) This section is not applicable to the operation, use, or maintenance of any motor vehicle.

"(d) 'Professional employee,' as used in this section, includes superintendents, principals, classroom teachers, supervisors, counselors, and any other person whose employment requires certification and an exercise of discretion." [Emphasis added].

The purpose of this section is twofold: first, to provide local school boards with the authority to define the duties of professional school employees; secondly, to exempt such employees from individual liability for certain acts.

Section 21.912(b) grants qualified immunity to professional school employees for acts done within the scope of their employment involving judgment or discretion. Particularly, we are called upon to interpret the last clause of subdivision (b), the terms of which qualify the immunity by stating that there will be no personal liability "except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students."

There is language in the last clause which we find to be ambiguous. The problem is created by the use of the term "negligence" in the last phrase of that clause. At first glance, a reading of the last clause would seem to indicate personal liability for professional school employees who use excessive force in the discipline of students or who "use negligence" that results in bodily injury to students. Such a reading would be incorrect, however, because it is inaccurate to say that a person "uses negligence"; negligence occurs as a result of an act or omission by an individual. Because of this ambiguity, the meaning of the last clause is rendered uncertain and is susceptible of conflicting interpretations. Therefore, we are required to interpret the language of the statute involved in order to ascertain the intent of the Legislature. *See Koy v. Schneider*, 110 Tex. 369, 221 S.W. 880 (1920); *Commissioners Court of Lubbock County v. Martin*, 471 S.W.2d 100 (Tex.Civ. App.—Amarillo 1971, writ ref'd n. r. e.).

Bernhard would have us interpret the last clause in such a manner that an employee would be liable for either the use of excessive force in disciplining a student or for any act of negligence that results in bodily injury to a student. This was the interpretation adopted by the court of civil appeals. The individual defendants, on the other hand, urge a much narrower interpretation of the last clause. They contend that an employee may be liable only where he uses excessive force or is negligent in disciplining students which results in bodily injury to such students.

We conclude that the Legislature intended in the last clause of subdivision (b) to limit the liability of professional school employees to certain acts incident to the disciplining of students because this is the only manner in which section 21.912 can reasonably be interpreted as a whole. In determining legislative intent, we must look to the entire statute, not just to any one phrase, clause, or sentence of that statute. Further, one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone. *See Ex parte Roloff*, 510 S.W.2d 913 (Tex.1974); *Black v. American Bankers Insurance Co.*, 478 S.W.2d 434 (Tex.1972); *Francis v. International Service Insurance Co.*, 533 S.W.2d 408 (Tex.Civ.App.—Texarkana), *aff'd*, 546 S.W.2d 57 (Tex.1976).

In the statute before us, subdivisions (b) and (c) of section 21.912 contain the provisions relating to liability and must be read together in order to ascertain what the Legislature meant in the last clause of subdivision (b). An interpretation that the last clause of subdivision (b) subjects a professional school employee to liability for any act of negligence that results in bodily injury to a student is untenable when read in light of subdivision (c).

Section 21.912(c) states that "[t]his section is not applicable to the operation, use,

or maintenance of a motor vehicle." By this language, the immunity granted to professional school employees by section 21.912(b) is not extended to acts incident to the operation, use, or maintenance of motor vehicles. Therefore, a professional school employee may be personally liable for certain negligent acts involving motor vehicles.[5]

If the interpretation of subdivision (b) urged by Bernhard were followed, then subdivision (c) would be meaningless since liability for the negligent operation of a motor vehicle would necessarily be covered by the broader provisions of subdivision (b). We must give full effect to subdivision (c), however, because it is well established that every word in a statute is presumed to have been used for a purpose, *Jessen Associates, Inc. v. Bullock*, 531 S.W.2d 593 (Tex.1975); *Perkins v. State*, 367 S.W.2d 140 (Tex.1963), and that the Legislature did not intend to do a useless thing by putting a meaningless provision in a statute. *Duson v. Poage*, 318 S.W.2d 89 (Tex.Civ.App.—Houston 1958, writ ref'd n. r. e.). Therefore, the effect of subdivision (c) is to negate a broad interpretation of subdivision (b) when the two provisions are construed together.

We hold Section 21.912(b) of the Texas Education Code to mean that a professional school employee is not personally liable for acts done within the scope of employment, and which involve the exercise of judgment or discretion, except in circumstances where disciplining a student, the employee uses excessive force or his negligence results in bodily injury to the student.

As there were no issues in this case concerning the punishment of Bernhard, we hold that the trial court was correct in granting the individual defendants' motion for summary judgment. *See Mitchell v. Baker Hotel*, 528 S.W.2d 577 (Tex.1975); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970); *Swilley v. Hughes*, 488 S.W.2d 64 (Tex.1972).

5. The language used in section 21.912(c) is similar to that used in the Texas Tort Claims Act. Section 19A of that Act renders school districts liable for the negligence of their employees in the operation of motor vehicles. Likewise, an employee could be personally liable for his negligence arising from the same circumstances.

Accordingly, the judgment of the court of civil appeals is reversed and that of the trial court affirmed.

SAM D. JOHNSON, J., writes dissenting opinion in which POPE, J., joins.

SAM D. JOHNSON, Justice, dissenting.

This dissent is respectfully submitted.

The majority has interpreted Section 21.-912(b) of the Texas Education Code in a manner which effectively grants immunity to professional school employees for acts of negligence that result in bodily harm to students. This interpretation is clearly contrary to the legislative intent and prevailing legal authority.

A statute should be construed to give effect to the legislative intent. *Minton v. Frank*, 545 S.W.2d 442 (Tex.1976); *Jones v. Del Andersen and Associates*, 539 S.W.2d 348 (Tex.1975). Where the wording of a statute is ambiguous or leaves the meaning obscure, the courts must resort to the legislative history to resolve the ambiguity. *Texas & N. O. R. Co. v. Railroad Commission*, 145 Tex. 541, 200 S.W.2d 626 (1947); *Austin Road Company v. Evans*, 499 S.W.2d 194 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.). In the instant case the majority notes that the language utilized in Section 21.912(b) is ambiguous. Section 21.-912(b) provides:

"No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, *except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students*." [Emphasis added.]

As noted by the majority opinion, the language in the last clause of subsection (b) is ambiguous in its use of the term "negligence." Bernhard argues that this clause means that professional school employees may be personally liable where their negligence results in bodily injury to students.

The individual defendants, however, argue that the clause means that professional school employees are subject to personal liability only when they use excessive force or negligence in the punishment of students which results in bodily injury to a student.

In order to resolve this ambiguity, this court is required to determine the legislative intent. The legislative history of Section 21.912 is explicit in conveying the intent of the Legislature. In its committee report to the House of Representatives, the Committee on Judiciary submitted a "bill analysis" which provided the following background statement or statement of purpose of the bill, which was enacted and codified as Section 21.912:

"School employees performing certain duties may be individually liable for certain actions. As there are often no specific guidelines for their duties, their responsibilities are not clearly defined.

"This bill would allow Boards of Trustees of independent schools to set school standards and also exempt these persons from individual liability for acts within the scope of their duties *except for individual negligence*." [Emphasis added.]

This "bill analysis" further summarized each subsection of Section 21.912, analyzing Section 21.912(b) as follows:

"No employee shall be personally liable for Acts incident to or within the scope of their duties of employment, and which act involves the exercise of judgment or discretion on the part of the employee, *except where the employee uses excessive force or is negligent*." [Emphasis added.]

This statement in the legislative history clearly demonstrates that the personal liability exemption extended by Section 21.-912(b) does not extend to negligent actions of professional school employees. Professional school employees remain liable for their negligent conduct which results in bodily injury to a student.

In effect, this statute merely codifies the prevailing authority with respect to liability of professional school employees for their negligence. *Wesley v. Page*, 514 S.W.2d 697 (Ky.1974); *Copley v. Board of Educa-*

*tion*, 466 S.W.2d 952 (Ky.1971); *Station v. Traveler's Insurance Co.*, 292 So.2d 289 (La. Ct.App.1974), 32 A.L.R.2d 1163 (1953). *See also* E. Bolmeier, Teachers' Legal Rights, Restraints and Liabilities § 8 (1971); Seitz, *Legal Responsibility Under Tort Law of School Personnel and School Districts as Regards Negligent Conduct Toward Pupils*, 15 Hastings L. J. 495 (1964); 78 C.J.S. *Schools & School Districts* § 238. At least one Texas case has considered this point and ruled in accordance with the prevailing law. In *Sewell v. London*, 371 S.W.2d 426 (Tex.Civ.App.—Texarkana 1963, no writ), the court was concerned with a student in a vocational training program who was injured while operating a power saw. The student alleged that the power saw was defective, that he was given improper supervision in its use, and that the teacher did not take the power saw out of operation until the alleged defects were corrected. The teacher was sued in his individual capacity and no claim was asserted against the school district. The trial court granted the teacher's motion for summary judgment, but the court of civil appeals reversed and remanded on the basis that fact issues were raised by the evidence concerning the alleged negligence of the teacher. Consistent with the majority of states, the court of civil appeals' decision indicated that professional school employees could be held personally liable for their negligent acts which resulted in bodily injury to students.

The individual defendants did not establish as a matter of law that they were immune from liability under the doctrine of governmental immunity. The judgment of the court of civil appeals should therefore be affirmed.

POPE, J., joins in this dissent.