

# The Attorney General of Texas

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

⌒1 Texas, Suite 700
.uston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

November 10, 1983

Honorable Lloyd Criss
Chairman
Labor & Employment Relations
   Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Opinion No.  JM-92

Re:   Whether Department of Health has jurisdiction over sanitary conditions on trains

Dear Representative Criss:

You have advised us that you have questions regarding

> the Texas Department of Health's jurisdiction over toilets on locomotives and toilets, drinking water and wash basins on cabooses.

Your questions are as follows:

> 1.  Are sanitary conditions on a railroad train subject to Texas Health Department regulations or to municipal health regulations?
>
> 2.  Is a railroad company (as an intrastate common carrier) required to maintain sanitary conditions as per article 4477-1, section 22(a), V.T.C.S.?
>
> 3.  Could unsanitary facilities be construed as a nuisance dangerous to the public health under article 4477-1, section 2(f)?  In addition, would the company be subject to abatement proceedings as described in section 3 of article 4477-1?
>
> 4.  [Does the entire statutory scheme of article 4477-1 affect the analysis of the standards applicable to] unsanitary toilet and drinking water facilities and wash basins on trains?

We understand that your question concerns only the usage of the facilities at issue by railroad company employees on freight trains and address our answers to such situations.

We will address your second question first.  Section 22(a) of article 4477-1, V.T.C.S., provides as follows:

> All persons, firms or corporations managing or operating bus lines or airlines in the State of Texas, or any person, firm or corporation operating any coastwise vessel along the shores of the State of Texas shall maintain sanitary conditions in all of their equipment and at all terminals or docking points.

Subsections (b), (c) and (d) of section 22 employ the term "common carrier." We believe that a railroad company is a "common carrier" as this term is defined in section 1(c) of article 4477-1, and that it is therefore subject to these three subsections. Subsection (a) of section 22, on the other hand, does not use the term "common carrier." Instead, it applies only to persons, firms or corporations which operate "bus lines," "airlines," or "coastwise vessels." In our opinion, none of these three categories can be stretched far enough to embrace railroad companies. See Railroad Commission v. Texas & New Orleans Railroad Company, 42 S.W.2d 1091 (Tex. Civ. App. - Austin 1931, writ ref'd) (statutory words which, when given ordinary meaning, are unambiguous are not subject to construction). We therefore answer your second question in the negative.

In order to next address your third question, we look to the following provision of article 4477-1:

> Sec. 2. (a) Any and all of the following conditions are hereby specifically declared to be nuisances dangerous to the public health;
>
> . . . .
>
> (f) All sewage, human excreta, waste water, garbage, or other organic wastes deposited, stored, discharged or exposed in such a way as to be a potential instrument of medium in the transmission of disease to or between any person or persons.
>
> (g) Any vehicle or container used in the transportation of garbage, human excreta, or other organic material which is defective and allows leakage or spilling of contents;
>
> . . . .
>
> Sec. 3. (a) Every person, possessing any place in or on which there is a nuisance shall, as soon as its presence comes to his knowledge,

> proceed at once and continue to abate the said nuisance.
>
> (b) Every local health officer who receives information and proof of the existence of a nuisance <u>within his jurisdiction</u> shall issue a written notice to any person responsible for the said nuisance ordering the abatement of same. He shall at the same time send a copy of the said notice to the local city, county, or district attorney . . . . [Other procedures follow]. (Emphasis added).

The prefatory remarks in your request letter indicate that the reference in your third question to "facilities" means toilet facilities in railroad cars. We will proceed upon this assumption. Section 3(a) provides that every person who possesses "any place" in which there is a nuisance must abate that nuisance. We believe that a toilet facility in a railroad car is a "place" within the meaning of section 3(a). Section 3(b) authorizes local health officers to order the abatement of nuisances "within [their] jurisdiction." In our opinion, a nuisance in a toilet facility on a locomotive engine, caboose, or other railroad car which is "within the jurisdiction" of a particular local health officer would be subject to abatement under section 3(a). The conditions specified in either item (f) or (g) of section 2, if found in a toilet facility on a train, would constitute the basis for a local health officer within whose jurisdiction the offending toilet facility or railroad car is located to initiate a proceeding under section 3. We therefore answer your third question in the affirmative.

As to your fourth question, article 4477-1 further provides:

> Sec. 5. (a) All human excreta in populous areas must be disposed of through properly managed sewers, treatment tanks, chemical toilets, approved privies, or by other methods approved by the State Department of Health. The disposal system shall be sufficient to prevent the pollution of surface soil, the contamination of any drinking water supply, the infection of any flies, cockroaches, or the creation of any other nuisance.
>
> . . . .
>
> Sec. 19. (a) No person, firm, corporation or other employer shall use, or permit to be used in the conduct of any business, manufacturing establishments or other place of employment, any process, material, or condition known to have any

> possible adverse effect on the health of any
> person or persons employed therein unless
> arrangements have been made to maintain the
> occupational environment to the extent that such
> injury will not result. Every industrial
> establishment shall be continually maintained in a
> sanitary condition.

Section 5(a) provides quite explicitly for the health department's
regulation of the type of toilet facilities used on railroad trains,
that is, chemical toilets. The prohibitions of section 19(a) against
unhealthy and unsanitary conditions in the workplace apply broadly to
any "place of employment." See Attorney General Opinion V-227 (1947).
Of course, the violation of either of these provisions, as well as of
section 22(b) (discussed below) or any other provision of article
4477-1, constitutes the basis for criminal prosecution under section
24 or injunctive relief under section 25.

We now turn to your first question. Although this question asks
generally about "sanitary conditions on a railroad train," your
prefatory remarks indicate that your specific concern is with sanitary
conditions in toilet facilities in railroad cars. We have already
noted that railroad companies are not subject to section 22(a) of
article 4477-1. This section requires only companies which operate
bus lines, airlines, and coastwise vessels to maintain sanitary
conditions in their equipment. Although it is not clear why the
legislature limited the application of this requirement to these three
types of vehicles, the fact is that it clearly did so. We must assume
that the specific distinctions drawn by the legislature in section
22(a) were drawn for a purpose. See also Goldman v. Torres, 341
S.W.2d 154 (Tex. 1960) (courts, possessing no legislative powers,
cannot enlarge or alter plain meaning of statutory language). Section
22(a), therefore, clearly furnishes no authority for Board of Health
Resources regulations to be applicable to trains.

Section 23 of article 4477-1 provides as follows:

> (a) All provisions of this Act are hereby
> declared to constitute minimum requirements of
> sanitation and health protection within the State
> of Texas and shall in no way affect the authority
> of Home Rule Cities to enact more stringent
> ordinances pertaining to the matters herein
> referred to, and shall in no way affect the
> authority of Home Rule Cities to enact ordinances
> as granted to them under Article XI, section V of
> the State Constitution, and Articles 1175-76 of
> the Revised Civil Statutes of Texas of 1925.
>
> (b) The Texas Board of Health Resources may
> adopt rules consistent with the general intent and

> purposes of this Act, and establish standards and
> procedures for the management and control of
> sanitation and health protective measures.

We must conclude that section 23(b) of article 4477-1 does not
authorize the Board of Health Resources to regulate general "sanitary
conditions" in trains, except insofar as section 22(b) mandates
standards for drinking water on common carriers. Given the
specificity of section 22(a), such regulations would not be
"consistent with the general intent and purposes of this Act." Nor
does the portion of section 23(b) which authorizes the board to
"establish standards and procedures for the management and control of
sanitation and health protective measures" supply the requisite
authority, except with regard to drinking water. We recognize that
section 23(b) was enacted more recently than section 22, Acts 1977,
Sixty-fifth Legislature, chapter 456, at 1189, but section 22(a) is
still on the books. We must read various provisions of the same act
in pari materia and attempt to harmonize them if possible. Martin v.
Sheppard, 102 S.W.2d 1036 (Tex. 1937). When we read sections 22(a)
and 23(b) together, we arrive at the inescapable conclusion that the
implied prohibition in section 22(a) against general board regulations
applicable to trains is not overridden by the general grant of
authority furnished by section 23(b), except as to drinking water. In
this context, it is instructive that in Barr v. Bernhard, 562 S.W.2d
844 (Tex. 1978) the Texas Supreme Court stated that one provision of a
statute may not be given a meaning out of harmony or inconsistent with
other provisions, even though it might be susceptible of such a
construction standing alone.

Section 23(a) explicitly provides that the provisions of article
4477-1 "shall in no way affect the authority of Home Rule Cities to
enact more stringent ordinances pertaining to the matters herein
referred to" and article 1175, V.T.C.S. empowers such cities

> [19.]  to define all nuisances and prohibit the
> same within the city and outside the city limits
> for a distance of five thousand feet . . . to
> prohibit the pollution of any stream, drain or
> tributaries thereof, which may constitute the
> source of water supply of any city and to provide
> for policing the same as well as to provide for
> the protection of any water sheds and the policing
> of same . . .
>
> . . . .
>
> 34.  To enforce all ordinances necessary to
> protect health, life and property, and to prevent
> and summarily abate and remove all nuisances and
> to preserve and enforce the good government, order
> and security of the city and its inhabitants.

We believe it would be unreasonable to conclude that the power of municipalities to define and abate nuisances does not extend to trains which contain such nuisances in the nature of unsanitary toilet facilities.

## S U M M A R Y

Sanitary conditions in toilet facilities of railroad trains which contain drinking water are subject to the regulatory authority of the Board of Health. Home rule cities may regulate sanitary conditions on trains. Railroad companies are not subject to section 22(a) of article 4477-1, V.T.C.S. If a nuisance as defined in section 2(f) or (g) of article 4477-1 is found in a toilet facility of a railroad car, a local health officer within whose jurisdiction the car is located may implement the enforcement procedures of section 3 of that article. Sections 5(a) and 19(a) apply to trains and provide the basis for action pursuant to section 24 and 25.

Very truly yours

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Colin Carl
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
David Brooks
Colin Carl