**Lawrence P. DUROSS & Karen Duross, Individually and as Next Friends of Leslie M. Miller, A Minor, Appellants,**

v.

**Jack FREEMAN and Ruth Horne, Appellees.**

**No. 04–91–00333–CV.**

Court of Appeals of Texas, San Antonio.

April 15, 1992.

Rehearing Denied June 17, 1992.

Randall C. Jackson, Jr., Speiser, Krause, Madole & Mendelsohn, Mata, San Antonio, for appellants.

Jeffrey A. Rochelle, Kenneth L. Malone, Emerson Banack, Jr., Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, for appellees.

Before PEEPLES, BIERY and CARR, JJ.

## OPINION

BIERY, Justice.

In January, 1991, Leslie M. Miller, was a student at the Earl Rudder Middle School in the Northside Independent School District, located in Bexar County, Texas. During her science class supervised by appellee Jack Freeman, Miss Miller participated in an experiment using potassium hydroxide (POH), a dangerously caustic chemical compound. Dry crystals of POH came into contact with Leslie's thigh. Because the chemical was in crystalline form, it did not burn her until it interacted with the moisture of her skin. POH is an alkaline substance; therefore, the effects of the burn were not felt until the injury had progressed. Later in the day, Leslie went to appellee Ruth Horn, the school nurse. Allegedly, there was not time to treat Leslie. When Leslie reached home, the injury was severe. Immediately upon reaching home, Leslie went to receive medical treatment; however, she contends the initial injury and the delay in treatment caused severe, permanent, disabling and disfiguring injury which will require reconstructive surgery in the future.

Leslie, through her parents Lawrence and Karen Duross, sued Jack Freeman and Ruth Horne for negligence in supervising the handling of the dangerous chemical and for delay in treating the injury. Appellants Freeman and Horne moved for summary judgment. All parties stipulated, for purposes of the summary judgment motion, that no issues of material fact exist. The parties further stipulated the only question presented by the defendants' motion for summary judgment is the legal interpretation of § 21.912(b) of the Texas Education Code.[1]

The trial court granted the defendants' motion for summary judgment based upon the Texas Supreme Court's analysis and interpretation of § 21.912(b) in *Barr v. Bernhard*, 562 S.W.2d 844 (Tex.1978). In *Barr*, the supreme court reversed this court's unanimous decision in *Bernhard v. Kerrville Indep. School Dist.*, 547 S.W.2d 685 (Tex.Civ.App.—San Antonio 1977). Further, the supreme court in *Barr* held

---

1. "No professional employee of any school district within this state shall be personally liable for any act incident to or within the scope of the duties of his position of employment, and which act involves the exercise of judgment or discretion on the part of the employee, except in circumstances where professional employees use excessive force in the discipline of students or negligence resulting in bodily injury to students." Tex.Educ.Code Ann. § 21.912(b) (Vernon 1987).

that "a professional school employee is not personally liable for acts done within the scope of employment, and which involve the exercise of judgment or discretion, except in *circumstances where disciplining a student*, the employee uses excessive force or his negligence results in bodily injury to the student." *Barr,* 562 S.W.2d at 849. (emphasis added). Nine years after *Barr,* the supreme court reexamined and reaffirmed its interpretation of § 21.912 of the Texas Education Code in *Hopkins v. Spring Indep. School Dist.,* 736 S.W.2d 617 (Tex.1987). As the court noted in *Hopkins,* the legislature had eight years between *Barr* and *Hopkins* to disagree with the supreme court's interpretation of § 21.912 and did not do so. *Id.* at 618.

Leslie and her parents forthrightly ask this court to reaffirm our position in *Bernhard v. Kerrville Ind. School Dist.* and, in effect, disregard the Texas Supreme Court's decisions in *Barr v. Bernhard* and *Hopkins v. Spring Indep. School Dist.* While we sympathize with Leslie's plight and recognize that *Barr* and *Hopkins* were not unanimous decisions, we are, as an intermediate appellate court, bound to follow the majority holdings in *Barr* and *Hopkins.*

Accordingly, the judgment of the trial court is affirmed.

## ON APPELLANTS' MOTION FOR REHEARING

On motion for rehearing, the appellants have again eloquently argued the injustice of a lack of a remedy for children such as Leslie Miller, injured by toxic chemicals while in the course of school science class. While this court may disagree among its members whether the dissent of Justice Johnson, joined by Justice Pope, in *Barr* should be the law, we are in unanimous agreement that the integrity of the judicial process commands this intermediate appellate court to obey the chain of command and follow the dictates of the majority of the Texas Supreme Court in *Barr* and *Hopkins.*

For this author at least, it is troubling from a public policy standpoint that our corporate citizens have unfettered access to the courts for redress of perceived tortious grievances,[1] but children, whose well-being has been entrusted to fiduciaries known as parents and teachers do not have access because of *Barr* and *Hopkins.* Recognizing that school personnel are conscientious, careful adults an overwhelming majority of the time, they, like other human beings, have occasional lapses of reasonable care for which the law has developed a remedy known as the negligence cause of action. Whether there was negligence in this particular situation is not before this court in this proceeding and no opinion is expressed thereon. What is before us, however, is whether children should have similar rights for redress of grievances as do corporations. This author does not find the concept inconsistent with basic fairness and expresses the hope that the Texas Supreme Court or the Texas Legislature will recognize the wisdom and justice of providing children some remedy in these unusual and extreme circumstances.[2] *See e.g.,* TEX. EDUC.CODE ANN. § 21.912(c) (Vernon 1987) (provision for no personal liability not applicable to operation, use, or maintenance of any motor vehicle).

Accordingly, appellant's motion for rehearing is denied.

PEEPLES, Justice, concurring.

I concur in the denial of the motion for rehearing, but I respectfully disagree with the majority's criticism of *Barr v. Bernhard,* 562 S.W.2d 844 (Tex.1978), in which

1. *See, e.g., Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768 (Tex.App.—Houston [1st Dist.] 1987), *cert. denied,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

2. I agree with Justice Peeples that there should not be wholesale litigation between students and teachers; however, I fail to see the logical consistency in a public policy which provides a remedy to a child maimed or killed because of negligent use of a motor vehicle (TEX.EDUC.CODE § 21.912(c)) and denies relief to a child maimed or killed by the negligent use of toxic chemicals. If there are to be exceptions such as in § 21.912(c), there should also be some attempt to address other extreme circumstances such as the one before us.

the supreme court interpreted TEX.EDUC. CODE ANN. § 21.912 (Vernon 1987).[1] Frankly, I give the edge to the *Barr* majority, but even if the *Barr* dissent had the better argument, the fact remains that the legislature has declined to "correct" any misreading of its statute for 14 years. Recently the court revalidated *Barr* in *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617 (Tex.1987). The court pointed out that the legislature, far from disagreeing with school immunity for negligence as interpreted in *Barr*, had broadened its reach. *Id.* at 618–19. In the years since *Hopkins* the legislature has again adopted the immunity provisions of § 21.912 by reference. *See, e.g.,* TEX.EDUC.CODE ANN. §§ 21.935(a), 105.95(e)(1) (Vernon 1991 & Supp.1992).

Justice Biery recommends that the legislature allow suits against individual school teachers and administrators for ordinary negligence. I do not join in that recommendation. I will concede that in our vast education system, which involves millions of students, there will be scattered instances in which the negligence of teachers and administrators causes a student real injury. The case before us may be one of them. But if the immunity for ordinary negligence is abolished, how will courts weed out, short of trial, suits brought for less appropriate reasons? Negligence is an expansive concept that can touch all aspects of human relations.[2] Courts seldom grant or affirm summary judgments in negligence cases.

A statute making it easier for students to sue teachers and administrators would pit them against each other, diverting money, time, and mental effort from education to litigation. Schools would pay a high price when those involved in litigation (and perhaps their colleagues) gave depositions instead of lectures; produced documents instead of learning; attended trials instead of classes; listened to legal advice instead

of student reports. While the lawsuit inched its way toward trial, the matter would occupy the minds of everyone, diverting attention and mental energy from the education task at hand. To buy peace and settle a lawsuit might be viewed as a concession of fault. Either way—settlement or trial—the student body would gossip about the lawsuit. The authority of all educators would be undermined. We would read more articles asking why Johnny can't read, and whether our students have fallen farther behind the Japanese. Teachers might wonder why they took up teaching instead of law; volunteers—who presumably would also have become liable when § 21.935(a) was amended—would regret their decision to give something back to the community.

The last thing our schools need is damage suits based on ordinary negligence when our state is having trouble funding public education in the first place. *See, e.g., Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489 (Tex.1992); *Edgewood Indep. Sch. Dist. v. Kirby*, 804 S.W.2d 491 (Tex.1991); *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391 (Tex.1989). True, the number of such suits per capita might be small, and perhaps they would seldom succeed. Nevertheless, even though the teacher or administrator might ultimately be vindicated in court, our schools can ill afford the dollar costs of defending the modern-day lawsuit.

Counsel for plaintiffs admitted at oral argument that under his interpretation of the statute—which is recommended to the legislature—a student could sue a physical education teacher who made the class do too many pushups and caused him to throw up. That admission demonstrates the legislature's wisdom in leaving the supreme

---

1. The statute has been held constitutional. *See Stout v. Grand Prairie Indep. Sch. Dist.*, 733 S.W.2d 290 (Tex.App.—Dallas 1987, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988).

2. For example, it is not clear to me how far Texas has gone in adopting the tort of negligent

infliction of emotional distress, but the language in some cases is broad. *See, e.g., St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649 (Tex.1987) (broad language approving cause of action for negligent infliction of mental anguish; theory applied to parents' claim for negligent handling of corpse).

court's interpretation of the statute in *Barr* untouched.