# Supreme Court of Texas

No. 21-0080

Glenn Hegar, Comptroller of Public Accounts of the State of Texas and Ken Paxton, Attorney General of the State of Texas,

*Petitioners*,

v.

Health Care Service Corporation,

*Respondent*

On Petition for Review from the
Court of Appeals for the Third District of Texas

JUSTICE BLACKLOCK, joined by JUSTICE DEVINE, JUSTICE BUSBY, and JUSTICE YOUNG, dissenting.

"We have consistently applied an ancient pro-taxpayer presumption: The reach of an ambiguous tax statute must be construed strictly against the taxing authority and liberally for the taxpayer. In other words, a tax must apply unequivocally." *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013) (cleaned up) (quoting *Morris v. Hous. Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012)). This venerable presumption traces its roots to "an old English rule that the sovereign is bound to express its intention to

tax in clear and unambiguous language." *Id*. (citation, internal quotation marks omitted). This Court has long employed it. *E.g., Tex. Unemployment Comp. Comm'n v. Bass*, 151 S.W.2d 567, 570 (Tex. 1941).

This well-established default rule demands clarity from the Legislature before taxes may be imposed. It should not be invoked lightly, as its injudicious use would allow taxpayers to unfairly escape their obligations. Courts must strive to understand the Legislature's meaning, even when its choice of words makes that task difficult. But in the face of a tax statute that cannot be applied with confidence one way or another, the default rule acknowledges that it is better for courts to admit that the statute is unclear and require the Legislature to clarify itself than to side with the government and thereby risk judicially imposing a tax the Legislature never authorized. By invoking the default rule in favor of taxpayers when indeterminate statutes yield indeterminate results, courts ensure that the Legislature, not the Comptroller or the judiciary, imposes the taxes collected by the State.

The presumption in favor of taxpayers should control today's case. The primary question presented is whether the "premium tax" imposed on health insurers by the Insurance Code applies to "stop-loss" policies issued to employers who provide self-funded health coverage to their employees. *See* TEX. INS. CODE § 222.002(b). To answer that question, the Court must decide whether these insurance policies "cover[] risks on individuals or groups." *Id*. The Court and the Comptroller have a reasonable reading of the Code under which Blue Cross must pay the premium tax on these policies. But the court of appeals and Blue Cross likewise have a reasonable reading. Because the Code's text provides

2

no unambiguous answer, we should rule for the taxpayer. If this causes an unanticipated or undesirable gap in the tax's application, the Legislature should amend the statute to express its wishes more clearly.

I respectfully dissent in part.[1]

## I.

The premium tax applies to "premiums . . . received by the insurer . . . from any kind of . . . insurance policy or contract covering risks on individuals or groups located in this state and arising from the business of . . . health insurance . . . ." TEX. INS. CODE § 222.002(b). The parties dispute whether the stop-loss policies sold by Blue Cross "aris[e] from the business of . . . health insurance." I agree with the Court that they do. The real question is whether the stop-loss policies "cover[] risks on individuals or groups."[2]

The premium tax has been amended in the not-too-distant past in a way that bears directly on this question. The premium tax previously applied to premiums from policies "covering a person located

---

[1] I agree with the Court that the stop-loss policies are unambiguously subject to the "maintenance tax," and I join that portion of the Court's opinion. *See* TEX. INS. CODE § 257.003.

[2] The Court emphasizes the statute's instruction that the tax applies to "*any kind*" of "policy or contract covering risks on individuals or groups" (emphasis added). *Ante* at 6–7. Of course, a policy must first cover risks on individuals or groups before it can be "any kind" of policy that does so. The words "any kind" do not expand the range of taxable premiums beyond those derived from policies covering individuals or groups. We are left with the question of whether these stop-loss policies cover "risks on individuals or groups." The words "any kind" have no direct bearing on that question, and any oblique suggestion that might be derived from them lacks the clarity required of tax statutes.

3

in this state."[3]  After a 2007 amendment, the tax now applies to premiums from policies "covering risks on individuals or groups."  *Id.* Because "person" typically includes business entities, the parties agree that corporate purchasers of Blue Cross's stop-loss policies are "person[s] located in this state."  They therefore agree that the pre-2007 version of the premium tax would have applied to the stop-loss policies at issue.  The parties disagree on what to make of the 2007 amendment, although there is little question it should be given some effect.  *Hunter v. Fort Worth Cap. Corp.*, 620 S.W.2d 547, 551 (Tex. 1981) ("[T]he legislature is never presumed to do a useless act.").

In construing the amendment's meaning, the Comptroller relies in part on a "bill analysis" prepared by legislative staff.  This document indicates that, in the mind of the staff who wrote the bill analysis, the amendment was intended to expand the scope of the premium tax.[4]  The Court correctly ignores this appeal to legislative history, which should play no role in statutory interpretation.[5]  Yet even if the "bill analysis" made any difference, an overall legislative desire to expand the tax's application to previously uncovered premiums would not preclude the

---

[3] Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 1, sec. 222.002(b), 2003 Tex. Gen. Laws 3611, 3621.

[4] House Comm. on Ways & Means, Bill Analysis, Tex. H.B. 3315, 80th Leg., R.S. (2007) ("The bill amends Section 222.002(b), Insurance Code, to clarify that the life, accident and health premiums subject to taxation are those premiums for risks on individuals or groups located in the state of Texas.  The current wording limits taxation to a person.").

[5] "The law as it passed is the will of the majority of both houses, and the only mode in which that will is spoken is in the act itself." *In re Facebook, Inc.*, 625 S.W.3d 80, 88 n.4 (Tex. 2021) (quoting *Aldridge v. Williams*, 44 U.S. (3 How.) 9, 24 (1845)).

4

possibility that the amendment also had the effect—intended or not—of shielding some premiums from the tax. Indeed, skilled players of the legislative game may find ways of making such things happen without those who write the "bill analysis" being any the wiser, which is one of the many reasons courts should give legislative history no weight.

What does it mean for an insurance policy to cover "risks *on*" individuals or groups? One natural way of understanding this phrasing would be to equate it with "risks *to*" individuals or groups. Sticklers might object that this gives no meaning to the Legislature's use of "on" instead of "to." But parsing the statute's confounding choice of preposition gets us no closer to understanding its meaning. I see no basis in the statutory text or in the common usage of these prepositions that would justify interpreting "risks on" any differently from "risks to."

Blue Cross's position, with which the court of appeals agreed, is that stop-loss policies cover financial risk "on" the corporate insured that offers self-funded healthcare coverage to its employees. Because the company purchasing the insurance to cover its own risk is neither an "individual" nor a "group," Blue Cross reasons, the premium tax does not apply. This simple, text-based approach to the statute's application has much to commend it. "Individual" typically refers to a natural person, not a business entity.[6] And "group" typically refers to multiple

---

[6] *E.g.*, *Individual*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) ("a single human being as contrasted with a social group or institution"); TEX. INS. CODE §§ 4001.003(5) ("'Individual' means a natural person."); 6002.002(5) ("'Individual' means a natural person, including an owner, manager, officer, occupant, or other individual.").

individuals, or at least multiple persons.[7] Absent a legislative definition or some other textual indication to the contrary, it would be quite odd to categorize a single company as either an "individual" or a "group."

The Comptroller responds that even if the company is neither an individual nor a group, the stop-loss policy nevertheless covers "risks on" the employees—who themselves are individuals or groups. Under this argument, although the employer buys the policy to protect its own financial interests, the risks covered are ultimately the risks that individual employees face from illness or injury. The employer assumes these risks on "individuals" (or "groups" of employees) when it offers a self-funded health plan, and the stop-loss policy offers protection against excess "risks on individuals or groups" that the employer might face. This is not an unreasonable reading of section 222.002(b), if one reads it as applying to "an insurance policy or contract *indirectly* covering risks on individuals or groups." But the word "indirectly" is not found in the statute, and courts should not "add words that are not implicitly contained in the language of the statute." *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988).

Blue Cross's position is that only policies *directly* covering risks on individuals or groups are subject to the tax. Of course, the word "directly" is not in the statute either. The statute does, however, expressly require the "policy" to "cover" risks "on" individuals or groups. One straightforward way to think of what it means for a policy to "cover

---

[7] *E.g.*, *Group*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) ("a number of individuals bound together by a community of interest, purpose, or function").

risks on" someone is to ask what risk the policy is actually written to cover. Correctly identifying the precise "risk" a policy "covers" is an important question to ask about any insurance policy. The covered risk may arise from other risks or relate to other risks in various ways, but that does not make those related risks the covered risks. Stop-loss insurance policies are written to "cover" only financial risks on the employing entity—not healthcare risks on employees, who are owed benefits by their employer whether the stop-loss policy pays or not. As the court of appeals reasoned, "stop-loss insurance insures the employer against the excess risk the employer assumes when it takes responsibility for its group members' medical costs—it does not insure the group of members against individual medical costs or losses." ___ S.W.3d ___, 2020 WL 7294614, at *5 (Tex. App.—Austin Dec. 11, 2020).

That the insured's *reason* for insuring against one risk is to protect against a second risk does not convert the second risk into the risk "covered" by the policy. Insurance policies are carefully written to cover only certain risks, and this one was written to cover only the employer's financial risk, not the employees' healthcare risk. If the only risk covered is a "risk on" the employer, which is neither an individual nor a group, then the tax described by this statute does not apply.

The Comptroller responds that Blue Cross's reading of "individual" would lead to the absurd result that premiums paid by a corporate employer would not be subject to premium taxes, but premiums paid by an individual proprietor would. This does seem like an oddity, but the concern may be purely theoretical. The Comptroller is correct that stop-loss premiums paid by an "individual" employer

7

acting without having formed any business entity would be subject to the tax under Blue Cross's reading of the statute. But it is not absurd to suggest that the Legislature may not have accounted for unincorporated sole proprietorships when it amended a statute in a way that creates a distinction between "individuals" and business entities. Very few businesses operate as individual proprietorships, and very few that do so are in the market for stop-loss insurance. Such oversights or odd results in outlier cases are not the kind of true absurdities that would compel us to read "individuals or groups" to include entities that are neither.

The Comptroller also argues that, read in context, "individuals" and "groups" are antonyms reflecting the Legislature's attempt to include all health insurance policies. As the Comptroller sees it, "the only reasonable interpretation is that the Legislature intended the two antonyms to be all-inclusive so that there would be no gaps in the premium taxes." This is not an entirely unreasonable way to read the statute, although, yet again, it requires interpreting "individuals or groups" to include entities that are neither. Had the Legislature sought such an all-inclusive result, expansive words like "anyone" or "any insured" were available. The Legislature chose, instead, the apparently limiting words "individuals or groups." Why use these words of limitation unless there are some insureds whose healthcare-related policies are not covered by the tax? What purpose does "individuals or groups" serve in the statute if not to carve out policies covering insureds who are neither? It is not the courts' job to make sure there are no "gaps"

8

in a tax's application. "Tax policy gap-filling . . . is best left to legislators, not courts or agencies." *TracFone*, 397 S.W.3d at 176.

The Court and the Comptroller note that Chapter 222 expressly makes an exception for only a specific type of stop-loss policy, which suggests that other types of stop-loss policies are subject to the tax. Section 222.002(c)(3) provides that "premiums received from an insurer for reinsurance" are not subject to the tax. Section 222.002(d) then states: "For purposes of Subsection (c)(3), a stop-loss or excess loss insurance policy issued to a health maintenance organization is considered reinsurance." Reinsurance premiums are not subject to the premium tax. TEX. INS. CODE § 222.002(c)(3). The Comptroller argues that if all stop-loss policies were not covered by the premium tax, there would be no reason for the Legislature to specifically exclude HMOs' stop-loss policies in section 222.002(d).

Blue Cross responds with a plausible theory explaining the exception. Subsection (d) is specific to HMOs, which are not "insurers" in the statute's parlance but which nevertheless must pay premium taxes. *See id.* § 222.002(b) (imposing premium tax on both "an insurer" and a "health maintenance organization"). Whereas insurers concerned about their own excess risk would purchase "reinsurance," HMOs concerned about their excess risk could not buy reinsurance, which only insurers can buy.[8] Instead, an HMO would buy a stop-loss policy to

---

[8] *See Tex. Dep't of Ins. v. Am. Nat'l Ins. Co.*, 410 S.W.3d 843, 848 (Tex. 2012) ("Reinsurance, on the other hand, has been described as the transfer of all or part of one insurer's risk to another insurer, which accepts the risk in exchange for a percentage of the original premium. The true reinsurer is

cover the same risk insurers cover with reinsurance. Reinsurance premiums are excluded altogether from the premium tax. *Id*. § 222.002(c)(3). Thus, to ensure HMOs are treated comparably to insurers, the Legislature enacted section 222.002(d) to denominate stop-loss policies issued to HMOs as "reinsurance" in order to categorically exclude them from the tax and ensure equal treatment as between insurers and HMOs.

The Comptroller's argument regarding the subsection (d) exception has some appeal. If Blue Cross's stop-loss plans were not taxed because they do not cover "risks on individuals or groups," then an HMO's stop-loss plan would likely not be taxed, because it covers "risks on" the HMO, which is certainly not an "individual" and probably not a "group." If that is how the statute works, then section 222.002(d) seems to have little independent effect. We often presume "the Legislature did not intend to do a useless thing by putting a meaningless provision in a statute." *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978). But this canon is not absolute, and must sometimes yield to other concerns.[9] Rigid application of the canon assumes that legislators would never employ a belt-and-suspenders approach to clearly resolve a

merely an insurance company or underwriter which deals only with other insurance companies." (cleaned up)).

[9] *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) ("The canon against surplusage is not an absolute rule . . . ."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 176 (2012) ("Put to a choice, however, a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage. So like all other canons, this one must be applied with judgment and discretion, and with careful regard to context.").

discrete question about the statute's application without commenting on its other applications.

Here, the canon of surplusage-avoidance does not dictate the statute's meaning because the Legislature changed "person" to "individual or group" after section 222.002(d) was already part of the statute. Thus, as the statute used to read, section 222.002(d) carved out stop-loss plans issued to a particular category of "person"—HMOs. If, however, the change from "person" to "individuals or groups" is given its natural effect, then a broader category of stop-loss plans is no longer subject to the tax. In light of the statute's history, section 222.002(d)'s apparent superfluity does not mean the Legislature "did a useless act." *See In re Mo. Pac. R.R.*, 998 S.W.2d 212, 216 (Tex. 1999). Instead, its continued presence in the statute merely indicates the Legislature did not bother to repeal it—a repeal which would surely have been vigorously opposed by HMOs, who valued their explicit carve out in section 222.002(d).[10]

Ultimately, the Comptroller's argument is that the non-repeal of an exception covering a subset of stop-loss policies *implies* that other stop-loss policies are generally taxable—even though it is hard to see how these policies cover "risks on individuals or groups." But this kind of reasoning is particularly suspect in tax cases: "[W]e will not extend

---

[10] "[T]his is the history of the legislation, not legislative history. . . . [N]obody should quarrel with examining how an enacted statute changes over time." *Pruski v. Garcia*, 594 S.W.3d 322, 328 n.2 (Tex. 2020) (quoting *Ojo v. Farmers Grp., Inc.*, 356 S.W.3d 421, 445 n.31 (Tex. 2011) (Willett, J., concurring in part)).

11

the reach of an ambiguous tax by implication." *TracFone*, 397 S.W.3d at 183.

Finally, the Court reasons that another exception found in section 222.002 shows that an employer can be viewed as a "group." Section 222.002(c)(5) exempts from the premium tax policies "in which the group covered . . . consists of a single nonprofit trust established to provide coverage" to certain governmental employees. If such a trust could be a "group," the Court says, then so could an employer purchasing stop-loss insurance. This argument is unconvincing. The Court takes from subsection (c)(5) a suggestion that a single entity, a "trust established to provide coverage" to individuals, can be a "group." From this suggestion, it extrapolates that the statute's use of "group" must include *any* single business entity—which would be a wholesale departure from the ordinarily plural meaning of "group."

I see no reason to think that "group" bizarrely includes any singular business entity just because "group" can mean a certain kind of insurance trust. The only trust that subsection (c)(5) suggests can be a "group" is a trust "established to provide coverage" to government employees. In such a scenario, the coverage is directly for the employees, and the trust is just the vehicle by which their group coverage is accomplished. Calling such an entity a "group" for insurance purposes bears no resemblance to calling a single corporation insuring against its financial risk a "group." The former sounds like typical insurance parlance, while the latter altogether defies the ordinary meaning of "group."

## II.

I honestly cannot tell whether, under the peculiar, amended wording of section 222.002, stop-loss policies cover "risks on individuals or groups." Rather than pretend it has discovered the statute's one true meaning, the Court should require the Legislature to speak more clearly. Like the court of appeals, we should "strictly construe the language of section 222.002(b) against taxation to conclude that a stop-loss policy issued to a self-insured employer is not an 'insurance policy or contract covering risks on individuals or groups.'" 2020 WL 7294614, at *5 (quoting Tex. Ins. Code § 222.002(b)); *see also TracFone*, 397 S.W.3d at 182. The court of appeals' judgment on the premium tax should be affirmed. Because the Court does otherwise, I respectfully dissent in part.

James D. Blacklock
Justice

**OPINION DELIVERED:** June 17, 2022