Ruby Lee DOWNING, Individually and
as Next Friend of Teresa Maria
Gutierrez, Appellant,

v.

Lucy BROWN, Neal Logan, Ophelia
Herrera, and Lubbock Independent
School District, Appellees.

No. 07–95–0357–CV.

Court of Appeals of Texas,
Amarillo.

June 11, 1996.

Rehearing Denied July 10, 1996.

O'Shea & Forcum, Dirk D. Johnson, Lubbock, for Appellant.

McWhorter, Cobb & Johnson, Ann Manning, Lubbock, for Appellee.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

BOYD, Justice.

In this appeal, appellant Ruby Lee Downing, individually and as next friend of her minor daughter Teresa Maria Gutierrez (Teresa), seeks reversal of a take-nothing summary judgment in favor of appellees Lucy Brown, Neal Logan, Ophelia Herrera (the individual appellees) and Lubbock Independent School District (LISD). The appeal arises from a proceeding in which appellant filed suit against appellees for injuries to

Teresa, a LISD student, sustained in two assaults by another student attending her school.

The facts asserted by appellant, and additional but uncontroverted facts asserted by appellees, are as follows: In October 1991, Teresa was a sixth grade student of appellee Ophelia Herrera. Another student, Leslie McDade (Leslie), and some of Leslie's friends made several threats against Teresa. At her mother's instruction, Teresa told Herrera of the threats on October 10, 1991. Herrera kept Teresa and one of Leslie's friends, Tamasha Green (Tamasha), after class to attempt to settle their differences. At the end of the meeting, Herrera was satisfied that the problem had been resolved, but Teresa felt that Herrera's action "only made it worse." Teresa asserts that Herrera refused her requests to speak to the school principal, appellee Lucy Brown, about the threats.

On October 16, Leslie threatened to assault Teresa. Teresa related the event to Herrera in a class writing assignment. Herrera took no action in response to Teresa's paper other than to note in the margin that she should get new friends. On her way home from school with her younger brother, Teresa was attacked by Leslie who "beat [Teresa's] head against the concrete sidewalk" and kicked her several times. Although Tamasha and others were present, only Leslie committed the assault. A teacher who was leaving the school saw the attack, intervened, and took Teresa back to school to see Principal Brown.

By affidavit, Brown stated that she was not aware of any conflict before the afternoon of October 16, 1991. When Teresa was brought to her office, Brown "observed no outward signs of major physical injury on Teresa." Brown's response was to suspend Leslie, Tamasha, and two other girls for three days; however, Teresa asserts she spent ten days in the hospital and underwent several surgeries to ameliorate her injuries.

Teresa did not return to school until May 1993. When appellant sought to enroll Teresa in LISD's Hutchinson Junior High School because of its special programs, LISD school counselor Nancy Crow advised her that Les-

lie was a student at Hutchinson. Crow offered to enroll Teresa in another school with similar programs. Appellant declined the offer. Because of the limited number of classes, efforts to keep the girls apart were not entirely successful and Teresa was placed in one class with Leslie. On the first day of class on May 10, 1993, Tamasha told Teresa that "she would not get out of the hospital this time." When appellant told the school counselor and an assistant principal of the threat, they informed Teresa's teachers of the conflict and asked them to "watch for any signs of problems."

On May 12, Teresa was pushed into a stairwell wall, which she said aggravated her previous injuries. While Teresa was unable to determine who pushed her, Leslie and Tamasha were both present at the time. When Teresa reported this event to Neal Logan, he asked assistant principal Edwards to investigate. Edwards asked Teresa to identify any possible witnesses using a school photo roster. As a result of Teresa's identification, Edwards interviewed Leslie, Tamasha and other students, all of whom denied the incident. Teresa withdrew from school on May 17, 1993.

Appellant's live pleading asserted claims against the individual appellees in their individual and official capacities, and against LISD for the negligent failure to discipline Leslie. She asserted claims under 42 U.S.C. § 1983 (1988) for deprivation of her constitutional rights by appellees while acting under color of state law and, additionally, asserted a cause of action for deprivation of due process rights under Article I, Section 19 of the Texas Constitution.

Brown, Logan and Herrera jointly moved for summary judgment urging three grounds: 1) that appellant's petition "fail[s] to state a cause of action under state law since [appellees] are immune from liability based on Tex. Educ.Code § 21.912(b);" 2) appellant's petition fails to state a cause of action under 42 U.S.C. § 1983 or the Texas Constitution; and 3) there are no genuine issues of material fact. LISD moved for summary judgment based on 1) the statute of limitations, 2) failure to state a cause of

action under § 1983, and 3) "fail[ure] to state a claim ... for negligence." Without elaboration, the trial court granted both motions; hence, this appeal.

It is now axiomatic that in order for a defendant to be entitled to a summary judgment, he must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991), or must establish one or more defenses as a matter of law. *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 445 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.).

The standards for appellate review of a summary judgment are also axiomatic. The Texas Supreme Court has explicated that:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Sysco Food Serv., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex.1994).

We begin our review with the grounds urged in the summary judgment motion of Brown, Logan and Herrera. These appellees argued to the trial court, as they do on appeal, that appellant "fails to state a cause of action" for negligence because those appellees are immune from liability under the facts of this case by virtue of Texas Education Code § 21.912(b). Their argument in support of this ground repeatedly refers to their "official immunity." Proper consideration of this argument requires clarification of several points.

First, § 21.912(b) of the Education Code was repealed effective May 30, 1995, approximately a month before the individual appellee's motion was filed. Acts of May 30, 1995, 74th Leg., R.S., ch. 260, §§ 58, 86, 1995

Tex.Gen.Laws 2207, 2498, 2505. No saving provision of that act is applicable to former § 21.912. However, the substance of that section was recodified, without material change, and now appears at Tex. Educ.Code Ann. § 22.051 (Vernon 1996). Acts of May 30, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex.Gen.Laws 2207, 2283. We will refer to this statute by its current section number, 22.051.

Second, immunity is an affirmative defense, *Villarreal v. Martinez*, 834 S.W.2d 450, 452 (Tex.App.—Corpus Christi 1992, no writ), and is distinct from the failure to state a cause of action. This distinction is significant because the failure to state a cause of action is generally not resolvable in a summary judgment proceeding. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Hall v. Stephenson*, 919 S.W.2d 454 (Tex. App.—Fort Worth 1996, n.w.h.). Appellees have apparently confused Texas summary judgment practice with a judgment on the pleadings permitted by Rule 12 of the Federal Rules of Civil Procedure.[1] The proper method to challenge a plaintiff's failure to state a claim in Texas courts is by special exception. Tex.R. Civ. P. 91; *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ).

Finally, official immunity is a common law doctrine, *City of Beverly Hills v. Guevara*, 904 S.W.2d 655, 656 (Tex.1995), distinct from the statutory immunity created by § 22.051. Comment, *Broad Tort Immunity Provide Texas Public Schools and Public School Personnel: a Reappraisal*, 16 Tex. Tech L.Rev. 515, 522 (1985). Before the statutory immunity of § 22.051 and its progenitor, Texas teachers did not enjoy the defense of official immunity granted to other public officials. *See Stout v. Grand Prairie I.S.D.*, 733 S.W.2d 290, 293 (Tex.App.—Dallas 1987, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988); *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.); *Sewell v. London*, 371 S.W.2d 426

---

1. Rule 12(b)(6) specifically permits judgment for failure to state a claim upon which relief can be granted.

(Tex.Civ.App.—Texarkana 1963, no writ); Comment, *Liability of Texas Public Officials for Their Tortious Acts,* 16 Hous. L.Rev. 100, 120–21 (1978).[2]

One recent opinion assumes that Texas teachers and principals may assert the defense of official immunity. *Fowler v. Szostek,* 905 S.W.2d 336, 342 (Tex.App.—Houston [1st Dist.] 1995, no writ). However, this opinion relies on authority discussing the official immunity of peace officers and social service workers. *Id.* A few opinions fail to distinguish between the statutory immunity of former § 21.912 and common law official immunity. *See Gallegos v. Escalon,* 918 S.W.2d 62 (Tex.App.—Corpus Christi 1996, n.w.h.); *Newman v. Obersteller,* 915 S.W.2d 198, 199 (Tex.App.—Corpus Christi 1996, n.w.h.). Based on the foregoing authority, we are convinced that appellees may not assert the common law defense of official immunity. Their summary judgment on appellant's state law negligence claims must stand or fall on the statutory immunity granted by § 22.051.

The statute upon which the individual appellees base their immunity defense provides:

A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

Tex. Educ.Code Ann. § 22.051(a) (Vernon Pamph.1996).

■ The immunity granted by this statute contains four elements that must be established by the person asserting it:

1) he or she is a professional employee of a school district,

2) acting incident to or within the scope of duties,

3) which involve the exercise of judgment or discretion, and

4) are not within the stated exceptions.

The summary judgment evidence establishes that Brown, Logan and Herrera are professional employees as defined by § 22.051(c)(1). The evidence also establishes that their acts were within the scope of their duties as school district employees. Appellant contends that appellees acted outside the scope of their duties in refusing to "follow clear policies and create [discipline] plans for their respective campuses/classrooms."

In *Leadon v. Kimbrough Bros. Lumber Co.,* 484 S.W.2d 567 (Tex.1972), our supreme court addressed the scope of employment issue holding that "[i]t is not essential that the negligent act or omission should have been expressly authorized by the employer so long as it is in furtherance of the employer's business and for the accomplishment of the object for which the employee is employed." *Id.* at 569. Texas courts continue to follow *Leadon. See Darensburg v. Tobey,* 887 S.W.2d 84, 89 (Tex.App.—Dallas 1994, writ denied). Thus, we must overrule appellant's second point of error contending that the failure to create campus or classroom discipline plans was outside the scope of appellees' duties.

Appellant also challenges the individual appellee's position that the duties at issue involved the exercise of judgment or discretion. Both sides rely on cases discussing the distinction between discretionary and ministerial acts in the context of official immunity. While the question of official immunity is not present in this case, we agree that the cases are instructive.

■ Appellant argues that under LISD's *Discipline Management Plan* adopted by the board of trustees, appellees Brown and Logan, as school principals, had a ministerial duty to "assess and implement" a campus discipline management plan; that appellee Herrera had a ministerial duty to develop and maintain a discipline management plan for her classroom; that these were

---

2. However, Texas courts did recognize official immunity for school trustees and superintendents, at least in employment matters. *See Russell v. Edgewood I.S.D.,* 406 S.W.2d 249, 251 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.); *Chireno I.S.D. v. Wedgeworth,* 15 S.W.2d 679, 681 (Tex.Civ.App.—Beaumont 1929, no writ).

duties which all three appellees failed to perform; and because those duties were merely ministerial, those appellees were not entitled to the benefit of the statutory immunity.

Examination of the relevant portions of the District's Discipline Management Plan reveals the following provisions:

> B. The classification of school personnel in each school who have the authority to enforce the Discipline Management Plan is as follows:
>
> 1. Assessing and implementing the campus Discipline Management Plan will be the responsibility of the building principal, associate principal, or assistant principal.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> C. The Lubbock Independent School District recognizes that administrators, teachers, parents, and students have certain responsibilities in maintaining discipline in the schools and maintaining the Discipline Management Plan.
>
> 1. Administrators have the responsibility to:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> b. Maintain discipline and to implement the Discipline Management Plan
>
> 2. Teachers have the responsibility to:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> c. Develop and maintain a Discipline Management Plan for their classrooms and to make all students aware of the plan, posting the rules

Even if we were to accept the proposition that the grant of "authority to enforce" under section B could be read to impose affirmative duties, we cannot agree that an obligation to "assess" is equivalent to "create." The most nearly applicable definition of "assess" given in *Webster's Third New International Dictionary* is "to analyze critically and judge definitively the nature, significance, status, or merit of." Considered together with the explicit command of section C.1.b for administrators to "implement" the District's Discipline Management Plan, we cannot accept appellant's reading of section B.1 that the duty it imposes on the administra-

tors to create a campus management plan is merely ministerial.

■ The obligation of teachers to create a classroom Discipline Management Plan, in contrast, is clear and direct. Appellant does not suggest that decisions concerning the contents of any such plan would not be discretionary acts, but does contend that Herrera's duty to create such a plan was merely a ministerial one which she failed to perform. In considering that argument, we note the established rule that ministerial acts are not limited to those commanded by statute, but may also be imposed by orders or other duties. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994).

■ The summary judgment evidence is sufficient to raise a question of appellant's ability to establish that Herrera's failure to create a Discipline Management Plan for her classroom was the proximate cause of Teresa's injuries; however, by its nature, that is a question which must be resolved by the trier of fact upon a trial on the merits. Because appellee Herrera did not conclusively establish her entitlement to summary judgment on appellant's negligence claim, we must sustain appellant's first point of error as to appellee Herrera and overrule it as to appellees Brown and Logan.

We next consider the exceptions to the immunity provided by § 22.051. In its first opportunity to interpret the predecessor to § 22.051, our supreme court held it to mean:

> [A] professional school employee is not personally liable for acts done within the scope of employment, and which involve the exercise of judgment or discretion, except in circumstances where disciplining a student, the employee uses excessive force or his negligence results in bodily injury to the student.

*Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978). Because several of Bernhard's claims were based on omissions, the court impliedly read the statute's term "acts" to include omissions.

The court's holding in *Barr* that the exception for negligence must involve discipline has been widely criticized. *See Duross v. Freeman*, 831 S.W.2d 354, 356 (Tex.App.—

San Antonio 1992, writ denied) (on reh'g); *McManus v. Anahuac I.S.D.*, 667 S.W.2d 275, 279 (Tex.App.—Houston [1st Dist.] 1984, no writ); 16 Tex. Tech L.Rev. at 523; Comment, *Professional School Employees—The Privileged Class?*, 19 S. Tex. L.J. 664 (1978). Even so, in *Hopkins v. Spring I.S.D.*, 736 S.W.2d 617 (Tex.1987), the court revisited *Barr* and confirmed its interpretation.[3] We also note the legislature declined to modify the operative language construed by the supreme court in its recent recodification of the statute. Acts of May 30, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex.Gen.Laws 2207, 2283. Therefore, as an intermediate appellate court, we are required to follow the dictates of our supreme court in the *Barr* and *Hopkins* cases.

■■■■■ Appellees also cite *Barr* for the proposition that not only must the negligence causing bodily injury involve discipline, the bodily injury must be suffered by the same student who was disciplined. In *Diggs v. Bales*, 667 S.W.2d 916 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), the plaintiffs' son was injured when he was struck in the eye by an object allegedly shot at him by another student. They sought recovery for alleged negligence in the teacher's supervision of the classroom under the exception to § 21.912. In denying recovery, the court held the decision in *Barr* mandated it to hold that the phrase "negligence resulting in bodily injury to students" as used in the statute "is directed at the latter manner of student discipline in which no force is used but negligence in the imposition of the punishment results 'in bodily injury to [the student].' " *Id.* at 918. Parenthetically, the decision in *Diggs* was noted with approval by the supreme court in the *Hopkins* case. *Hopkins*, 736 S.W.2d at 619. We agree with the *Diggs* court's interpretation of the effect of the statute. Consideration of the holding in *Barr*, quoted above, and its restatement in *Hopkins* compels us to the conclusion that under the language of § 22.051 and the interpretation of its progenitor statute by our supreme

court, the individual appellees have conclusively established their immunity for appellant's negligent discipline and failure to discipline claims. We overrule appellant's third point of error.

■■■■■ Parenthetically, appellant has not challenged the summary judgment in favor of LISD on her negligence claims and, based on the limited waiver of sovereign immunity contained in § 101.051 of the Civil Practice and Remedies Code, the trial court's judgment on these claims was proper.

In her fourth point of error, appellant challenges the granting of summary judgment in favor of appellees on their 42 U.S.C. § 1983 claims. Section 1983 creates a cause of action for the deprivation of rights secured by the constitution or laws of the United States when that deprivation was committed by a person acting under color of state law. *Leffall v. Dallas I.S.D.*, 28 F.3d 521, 525 (5th Cir.1994). The supreme court has held that school districts are persons for the purpose of § 1983. *Monell v. Dept. Of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

■■■■■ Appellees' brief focuses on their qualified immunity from liability under § 1983; however, before the necessity of making that determination arises, we must examine whether appellant has stated a constitutional violation. *Walton v. Alexander*, 44 F.3d 1297, 1301 (5th Cir.1995). Appellant argues that her § 1983 claims are not based on a duty to protect Teresa from third parties but on "policies and/or customs of LISD that deprived [her] of her constitutionally protected right to be free from injury." The question of appellees' duty to protect Teresa from third parties is a threshold issue for finding the existence of a constitutionally protected right.

Section 1983 claims arising out of personal injury appeal to the substantive due process rights guaranteed by the 14th Amendment to the federal constitution. *Leffall*, 28 F.3d at

---

**3.** The relevant portion of Hopkins provides:
 This statute was construed in *Barr v. Bernhard*. This court held a professional school employee is not personally liable for acts done within the scope of employment and which involve the

 exercise of judgment or discretion, except when disciplining a student the employee uses excessive force or negligence which results in bodily injury to the student.
 736 S.W.2d at 618.

526. In *DeShaney v. Winnebago Co. Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Supreme Court held that the purpose of the Due Process Clause of the federal constitution "was to protect the people from the State, not to ensure that the State protects them from each other." *Id.* at 196, 109 S.Ct. at 1003. However, it did recognize an exception where the State created a special relationship by the exercise of such control as to deprive a citizen of the ability to protect themselves. *Id.* at 198–200, 109 S.Ct. at 1004–06. Examples of such special relationships are those created when citizens are restrained in State institutions. *Id.*

The degree to which a student's attendance at school creates such a relationship has been addressed by several federal courts. Because the United States Supreme Court has yet to address the issue, we look next to the opinions of the Fifth Circuit. In *Leffall*, a student was shot while socializing outside a school dance. Noting that the student's attendance at the dance was voluntary and not mandated by the State's compulsory education law, the court held that no special relationship existed. 28 F.3d at 529.

In *Walton v. Alexander*, the court again examined[4] the special relationship issue in the context of a student's attendance at a state school for the deaf. The school required students, if they attended the school, to reside on school premises and be governed by very explicit rules concerning their activities. In spite of the strictly governed nature of the student's attendance at the school, because that attendance was voluntary, the court again held that there was no special relationship for purposes of § 1983. *Id.* at 1305.

In the present case, the uncontroverted summary judgment evidence shows that appellant was informed that Leslie attended Hutchinson Junior High School and was given the opportunity to have her daughter Teresa attend another school. This evidence supports the conclusion that Teresa's attendance at Hutchinson Junior High was voluntary and created no special relationship.

With reference to the events which occurred in 1991, before she was offered the opportunity to attend another school, LISD has asserted a defense of limitations. In doing so, LISD relies on *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), holding that the applicable limitations period for § 1983 claims is determined by reference to the limitations set by state law for personal injury claims. *Id.* at 275–76, 105 S.Ct. at 1946–47. In Texas this period is two years. Tex. Civ. Prac. & Rem.Code Ann. § 16.003 (Vernon Supp.1996). To the degree this defense is meritorious as to appellant's personal claims, it would not apply to Teresa's claims due to her disability as a minor under Tex. Civ. Prac. & Rem.Code Ann. § 16.001 (Vernon Supp.1996). Consequently, we must still consider the existence of a special relationship between Teresa and appellees while she was a student in 1991.

Several other federal circuit courts have addressed the question of whether the relationship between students and teachers or schools is a special relationship under *DeShaney*. The decisions to date hold that attendance at a public school is not sufficient to create a special relationship between the student and the State that requires the State to protect the student from third parties. *Graham v. Indep. Sch. Dist. No. I–89*, 22 F.3d 991 (10th Cir.1994); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993); *D.R. by L.R. v. Middle Bucks Area Vo. Tech. Sch.*, 972 F.2d 1364, 1368–73 (3rd Cir.1992) (en banc), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir.1992), *cert. denied*, 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); *J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir.1990).

In the absence of additional guidance from the United States Supreme Court or the Fifth Circuit, we defer to the holdings of the circuit courts cited above and hold that Teresa's status as a student of the individual appellees was not sufficient to create a special relationship imposing upon them a constitutional duty to protect her from third

---

4. Or reexamined, as the opinion was on rehearing *en banc.*

parties. Without such a duty, appellees are not liable for its breach and the trial court's summary judgment was proper. Consequently, we need not address the issue of qualified immunity. Appellant's fourth point of error is overruled. Again, parenthetically, appellant has failed to present a challenge to dismissal of her claims based on the Due Process Clause of the Texas Constitution.

Because of our sustention of appellant's first point insofar as Herrera is concerned, we reverse that part of the summary judgment, sever that part of appellant's action seeking recovery for her alleged failure to establish a Discipline Management Plan for her classroom and remand it to the trial court. We affirm the remainder of the judgment of the trial court.

QUINN, J., not participating.