**Christina and Don CHESSHIR, individually and as next friends of Dillon Chesshir, a minor, Appellants,**

v.

**Becky SHARP, Appellee.**

**No. 07–99–0370–CV.**

Court of Appeals of Texas, Amarillo.

April 12, 2000.

---

Brandi H. Fernandez, Lubbock, for appellants.

James E. Byrom, Ewbank & Byrom, P.C., Austin, for appellee.

Before QUINN, REAVIS and JOHNSON, JJ.

BRIAN QUINN, Justice.

Christina and Don Chesshir, individually and as next friends of Dillon Chesshir, (collectively referred to as the Chesshirs) appeal from a final summary judgment entered in favor of Becky Sharp (Sharp). The underlying dispute arose from burns received by Dillon during a class taught by Sharp. Upon being sued, Sharp moved for summary judgment contending that she was immune from suit. The trial court agreed, as evinced by its order granting her summary judgment and denying relief to the Chessshirs. The latter now assert three issues on appeal. The first issue concerns whether Sharp's conduct fell within the scope of her employment, the second, whether the tasks she was performing were ministerial or discretionary, and the third, whether summary judgment was improper.[1] For the reasons that follow, we affirm.

---

1. In effect, the third issue raised by the Chesshirs is merely a reiteration of issues one and two. That is, the third contention also pertains to whether Sharp exceeded the scope of

## Background

Dillon, who was 5 years old, attended kindergarten class at A.B. Duncan Elementary School. Sharp was his teacher. On the day in question, Sharp brought an electric frying pan to school to make donuts in class. During the exercise, Dillon stepped on the frying pan's cord, which caused the pan to topple and splatter hot grease on his face, neck and back. The resulting burns suffered by the youth required medical attention.

According to Sharp's affidavit and responses to discovery requests, she brought the frying pan to school with the intention of using it as part of her daily lesson. That is, the students were studying the letter "d" and, given that the word "donut" began with a "d", Sharp decided to cook some for the children. At the time, the children had also built a mock bakery wherein they previously had baked items. So, after reading a book about donuts, Sharp began frying several donuts (apparently with the help of her students) and it was at this time that Dillon stepped on the cord and burned himself.

Thereafter, the Chesshirs sued Sharp for negligence. Sharp responded by invoking sections 22.051 and 22.055 of the Texas Education Code and filing a motion for summary judgment claiming she was immune from suit. After the trial court entertained the respective arguments of the parties and summary judgment evidence, it agreed with Sharp, granted the motion, and entered summary judgment declaring that the Chesshirs take nothing. From this summary judgment, the Chesshirs appealed.

## Standard of Review

The applicable standard of review is well-settled. We find it sufficient to merely cite the litigants to *Science Spectrum v. Martinez*, 941 S.W.2d 910 (Tex.1997) and *Roth v. FFP Operating Part. L.P.*, 994 S.W.2d 190 (Tex.App.—Amarillo 1999, pet. denied) for a discussion of same.

## Application of Standard

■ Section 22.051(a) of the Texas Education Code states that:

A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.

TEX. EDUC.CODE ANN. § 22.051(a) (Vernon 1996). To come within the shield of that statute, one must satisfy several criteria. For instance, it must be shown that the person claiming immunity was, at the time of the accident, a professional employee of a school district performing a discretionary task incident to or within the scope of his duties. *Downing v. Brown*, 925 S.W.2d 316, 320 (Tex.App.—Amarillo 1996, *rev'd on other grounds*, 935 S.W.2d 112 (Tex. 1996). So too must it be shown that the exception mentioned in section 22.051 does not apply. *Id.*

At bar, the Chesshirs do not dispute that Sharp was a professional employee, nor do they argue that statutory exception applies. They simply contend that Sharp was neither acting within the scope of her duties nor performing a discretionary task when the accident occurred. We now analyze each contention in turn.

### a. Scope of Employment

■ Whether one is acting within the scope of his employment depends upon whether the general act from which injury arose was in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed. *Leadon v. Kimbrough Bros. Lumber Co.*, 484 S.W.2d 567, 569 (Tex.

her employment and whether the acts complained of were ministerial or discretionary.

1972); *Downing v. Brown,* 925 S.W.2d at 320. Should this test be satisfied, then neither 1) the failure of the employer to expressly authorize the act, nor 2) the fact that it was performed negligently, strip the act of its protective shield. *Williams v. Chatman,* 17 S.W.3d 694 (Tex.App.— Amarillo 1999, pet. denied).

■ Moreover, by the term "general act" mentioned above, we refer to the general course of conduct being undertaken at the time the accident occurred. For instance, if an employee making a delivery pursuant to the directives of his employer runs a red light, the act of making the delivery on behalf of his employer determines whether he acted within the scope of his employment, not whether his employer directed him to run the light.

■ Here, the acts which the Chesshirs considered negligent were threefold. They believed that Sharp should not have been 1) using the frying pan during class, 2) using it in the presence of 5 year old children, and 3) using it without "a proper base for [sic] foundation." As disclosed by the summary judgment evidence proffered by Sharp, however, each occurred in an instructional setting. That is, Sharp attested that she was using the frying pan during school hours as part of a lesson intended to teach the children about the letter "d". This, coupled with the truism that school districts hire teachers for the purpose of instructing students, leads us to conclude that Sharp established that she was acting within the scope of her employment when Dillon was burned. Moreover, the evidence used to establish this was clear, direct, positive, credible, free from inconsistency or contradiction, and readily controvertible should the Chesshirs have desired to controvert it. Tex.R. Civ. P. 166a(c) (stating that a summary judgment may be founded upon the testimony of an interested witness if the testimony is clear, direct, positive, credible, free from contradiction or inconsistency and readily controvertible).

■ Next, our conclusion is not altered by evidence suggesting 1) that Sharp failed to seek permission from superiors to utilize the frying pan as part of a lesson, or 2) that the administration subsequently banned "hot appliances" *after* the incident in question. Again, whether an act occurs within the scope of employment is not conditioned upon whether the employer expressly approved it. *Downing v. Brown,* 925 S.W.2d at 320. So, the lack of prior approval does not alone remove the act from the scope of employment. Furthermore, nothing of record indicates that the school district prohibited the use of frying pans in the classroom or as part of a lesson when Sharp initially brought the device to school. While we may make reasonable inferences from the evidence before us, *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995), no evidence exists upon which one can reasonably infer that use of the pan was prohibited at the time the accident occurred.[2]

Similarly untenable is the Chesshirs' argument that the act fell outside the scope of employment because the project 1) involved cooking, 2) was thought of only the night before its implementation, 3) was intended to be "fun" and, 4) involved items paid for by Sharp. As to the first ground, the only competent evidence of record illustrates that the act of cooking was part of the lesson. And, we are cited to neither precedent nor policy existent at the time of the incident that barred teachers from cooking in class as part of a lesson. Nor does the record contain any evidence which suggests that cooking and teaching were contradictory or mutually exclusive endeavors.

**2.** Evidence existed of record indicating that the school administration banned frying pans and like appliances *after* the incident. Yet, neither reason nor logic supports the proposition that because something was banned after an act occurred, it must have also been prohibited before it occurred.

As to the matter of when the project was initially contemplated, we find it utterly unreasonable to suggest that ideas cannot be implemented in the classroom merely because they were divined shortly before implementation. We know of no authority so holding and refuse to be the first to so hold. Nor do we care to hold that teachers can only teach that which is written in lesson plans created days earlier. Indeed, classrooms are inherently the incubator of rapidly developing thought. To place time restrictions on when the thought and implementation of ideas can occur would be to unduly restrict a teacher's ability to educate and a student's ability to learn.

As to the matter of the project being something other than a lesson because it was "fun", we again know of no authority suggesting that a project cannot be part of a lesson because it is "fun". To so conclude or infer is illogical, as a matter of law. Indeed, to make a project fun would be to capture a student's attention, which is the first step to learning. In short, fun and education are not contradictory or mutually exclusive. We assign no credence to the argument that because she thought the project would be fun, Sharp must have been acting outside the scope of her employment.

Lastly, it does not follow that simply because a teacher personally pays for items used in class she must be acting outside the scope of her employment when she uses those items. Again, the focus is on whether the teacher was pursuing the object of her employment when the act complained of occurred. If she was, then the fact that the items being used were purchased by the teacher, and not acquired with school funds, does not render her acts any less educational or remove her conduct from the scope of her employment. Thus, we cannot reasonably infer that Sharp acted outside the scope of her employment simply because she paid for the donut materials herself.

In short, the uncontradicted evidence of record established, as a matter of law, that Sharp acted within the scope of her employment when the incident in question occurred. And, we find nothing wrong in the trial court so holding, as a matter of law.

### b. Discretionary Act

■ Whether an act is ministerial or discretionary depends upon the ability of the actor to exercise discretion when performing it. In other words, if an edict prescribes the duties to be performed with such precision and certainty so as to leave nothing to the exercise of the actor's judgment, then the act is ministerial. *Downing v. Brown*, 935 S.W.2d 112, 114 (Tex. 1996). However, if the actor is entitled to personally deliberate about the manner or means of performance and invoke her own judgment, then it is discretionary. *Id.*

Additionally, and at least in the school setting, the focus is on the broad category of responsibility involved as opposed to some particular aspect of the responsibility. *Id.* For example, if some injury arises from the failure of a teacher to create and post a disciplinary plan, immunity is not dependent upon whether the acts of creating and posting the plan are discretionary or ministerial. *Id.* Rather, those acts are a part of the overall concept of discipline, and whether the teacher is entitled to immunity depends upon whether the overall responsibility to maintain discipline is discretionary or ministerial. *Id.*

Here, the particular act allegedly resulting in injury concerned the use of a potentially dangerous frying pan in a classroom. Yet, the appliance was being utilized as a teaching aid to help students learn about the letter "d". So, the broad category of responsibility which Sharp pursued when the accident occurred involved her duty to teach or instruct students. Moreover, like discipline, the responsibility to instruct is rife with judgment and personal deliberation. What to teach, how to teach it, and when to teach it are just some of the topics

which must be addressed by school administration and teachers in performing this task. Indeed, the legislature itself mandated that the curriculum meet individual needs. TEX. ED.CODE ANN. § 28.002(g) (Vernon's Supp.1999). If teaching is to meet the "individual" needs of students, then it can hardly be said that teaching is so precisely defined as to leave nothing to the exercise of judgment or discretion; in other words, individual needs cannot be met via one undeviating program designed for all students.

In short, the responsibility of teaching is inherently discretionary, as that term is defined in *Downing*. And, it being discretionary, we find no error in the trial court so holding as a matter of law.

Having rejected the Chesshirs' first two issues, and because the third is merely a reiteration of the first two, we need go no further. Accordingly, the summary judgment of the trial court is affirmed.