Terry **MYERS**, Keith Burgett, Christy Hackett, and Norma Nardone, Appellants,

v.

John **DOE** and Jane Doe, Individually and as Next Friends of Mary Doe, Appellees.

No. 2-00-423-CV.

Court of Appeals of Texas, Fort Worth.

July 12, 2001.

Locke, Liddell & Sapp, L.L.P., Bruce A. Griggs and John K. Arnold, Austin, for Appellants.

Barkholtz, Boehme & Borchardt, L.L.P., Geno E. Borchardt, James Foster Smith and Andee Russell, Fort Worth, Paul M. Hood, Dallas, for Appellees.

Panel A: DAY, HOLMAN, and GARDNER, JJ.

## OPINION

HOLMAN, Justice.

Appellees contend that the facts of this case are shocking and outrageous. Mary Doe, a special education student who functions at the level of a six to eight-year-old, was sexually assaulted while at school. By the next day, Appellants Terry Myers, Keith Burgett, Christy Hackett, and Norma Nardone knew about the incident. After Mary was sexually assaulted at school two more times, Appellees John and Jane Doe, individually and on behalf of Mary Doe, filed suit against Appellants alleging that they failed to effectively carry out mandatory duties and were negligent in disciplining the students involved. The facts of this case make it one of first impression.

In this interlocutory appeal, Appellants appeal from the trial court's order denying their motions for summary judgment. In two issues, Appellants contend that the trial court erred by denying their motions because they are entitled to statutory immunity on the grounds that: (1) they established they were exercising judgment or discretion with regard to the incident in question; and (2) they did not use excessive force to discipline Mary Doe. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 1999, Appellants were notified that Mary Doe, a seventeen-year-old special education student with the IQ of a six to eight-year old child, had been involved in a sexual encounter with another special education student, a boy whose nickname is "Mad Dog." The incident occurred on January 6 in an unlocked school elevator, during school hours. Hackett, the special education diagnostician in charge of disciplining the special education students and who had known Mary for eleven years, discussed the incident with her. Even though Mary informed Hackett that the sexual encounter was not consensual, Hackett determined that the sex had been consensual. Hackett relayed the information to the school's principal, Burgett, and vice-principal, Nardone. Burgett informed the school's superintendent, Myers, about the incident.

Hackett then informed Mary's mother that she determined the sex was consensual and that both students needed to be disciplined. Mary's mother disagreed with the contention that the incident had involved consensual sex, but reluctantly agreed with Hackett's assertion that Mary needed to be disciplined so that the incident would not be repeated. Because Hackett was in charge of disciplining the special education students, Burgett and Hackett agreed that Hackett would discipline Mary and "Mad Dog" by reprimanding them.[1] Hackett had Mary brought to

---

1. Although Appellants' counsel argues on appeal that Appellants never disciplined Mary or

"Mad Dog," Hackett's handwritten notes, made at the time of the incidents, contain

her office and proceeded to reprimand her for her behavior. Hackett only reprimanded Mary once even though she admitted that she knew Mary did not have very good reasoning skills and that she needed repetitive instruction in order to follow directions. The day after the incident occurred Mary told one of her teachers the incident was not consensual. The teacher prepared a memorandum advising Appellants that Mary had told her that the incident was not consensual. Hackett advised Burgett of the memo and talked to Mary, the teacher, and Mary's mother about the incident.

Nardone, the vice-principal, and Hackett discussed the incident and decided to implement some new policies and procedures. Appellants decided that they would: (1) instruct the teachers that Mary and "Mad Dog" were not to be left alone together; (2) instruct the teachers closest to the elevator not to allow the students on the elevator; and (3) have Mary and "Mad Dog" accompanied and watched by an escort. Hackett told Mary's parents that the new procedures were being followed, and Nardone testified that she assumed the procedures had been implemented because that was what had been discussed and decided.

Additionally, Appellants agreed on additional policies that were to be effective immediately including: (1) the door to the elevator was to be locked at all times; (2) only adults would have access to the keys to the elevator door; and (3) a mandatory tardy policy was created for Mary and "Mad Dog" by which it was to be reported to the school office if either student was late getting to class. Burgett even issued a directive that the students were not permitted to be alone together and were not allowed access to the school elevator. However, the policies created by Appellants were not carried out and Mary was assaulted in the elevator two more times during school hours.

On January 27, Nardone learned about the two additional incidents. "Mad Dog" was then removed from the classroom and placed into in-school suspension. Appellees brought suit against Appellants contending that their failure to perform ministerial acts and their negligent disciplining of Mary led to her injuries.

Appellants moved for summary judgment based on statutory immunity under education code section 22.051. TEX.EDUC. CODE ANN. § 22.051(a) (Vernon 1996). The trial court denied the motion for summary judgment. Appellants bring this interlocutory appeal from the denial of their motion for summary judgment pursuant to civil practice and remedies code section 51.014(a)(5). TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2001).

### STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 282 (Tex. 1996); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must

numerous references to the discipline she administered.

view the evidence and its reasonable inferences in the light most favorable to the nonmovant, the appellees. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. *Rhone–Poulenc,* 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin,* 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *KPMG Peat Marwick,* 988 S.W.2d at 748. To accomplish that here, appellants must present summary judgment evidence that establishes each element of their affirma-tive defense as a matter of law. *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

### Immunity Under The Texas Education Code

Education code section 22.051 provides immunity for professional employees of school districts:

> (a) A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, *except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students.*

TEX.EDUC.CODE ANN. § 22.051(a) (emphasis added).

■ Appellants are entitled to summary judgment if they conclusively prove as a matter of law that: (1) they are professional employees; (2) their actions were incident to or within the scope of their duties; (3) their duties involved the exercise of judgment or discretion; and (4) they did not use excessive force or negligence in disciplining Mary. *See id.* Appellants argue that they conclusively established each of these elements in the trial court. Appellees contend that Appellants failed to establish all of these elements as a matter of law. Specifically, Appellees challenge Appellants' evidence as it relates to the third and fourth elements. Thus, we must first examine the summary judgment evidence to determine if Appellants conclusively proved that their actions involved the exercise of judgment or discretion. *See id.*

### Exercise of Judgment or Discretion

 Whether an act is ministerial or discretionary depends upon the ability of the actor to exercise discretion when *performing it. Chesshir v. Sharp*, 19 S.W.3d 502, 506 (Tex.App.—Amarillo 2000, no pet.). In other words, if a policy prescribes the duties to be performed with such precision and certainty so as to leave nothing to the exercise of the actor's judgment, then the act is ministerial. *Downing v. Brown*, 935 S.W.2d 112, 114 (Tex.1996); *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex.1994); *Chesshir*, 19 S.W.3d at 506. Duties that involve the exercise of judgment or discretion shield the individual from liability unless they use excessive force or negligent discipline. *See* Tex.Educ.Code Ann. § 22.051(a). Duties that are ministerial and, therefore, do not involve the exercise of judgment or discretion, do not cloak the individual with immunity. *See id.; Cortez v. Weatherford ISD*, 925 S.W.2d 144, 148 (Tex.App.—Fort Worth 1996, no writ). Ministerial acts are not limited to those commanded by statute, but may also be imposed by orders or other duties. *See Chambers*, 883 S.W.2d at 654. The distinction between discretionary and ministerial acts is often one of degree because any official act that is ministerial still requires the actor to use some discretion in his or her performance. *Enriquez v. Khouri*, 13 S.W.3d 458, 462 (Tex. App.—El Paso 2000, no pet.).

### Evidence

#### A. Appellants Create Policies and Procedures

 After Mary was sexually assaulted, Appellants decided to create new policies and procedures, specifically:

○ Burgett issued a directive that the students were not permitted to be alone together and were not allowed access to the school elevator. However, Mary was assaulted two more times on the elevator.

● Burgett and Myers agreed that, effective immediately, the door to the elevator be locked at all times, and only adults would have access to the keys.

● The teachers with classrooms closest to the elevator were to be told that the school's policy was that the students were not to be allowed on the elevator and that Mary and "Mad Dog" were not to be allowed together unsupervised. However, Mike Daniel, the teacher with the classroom closest to the elevator testified that he was not told that Mary and "Mad Dog" were not to be together unsupervised and that they were not to be allowed on the elevator.

● Nardone testified that Appellants decided that the students were to be accompanied and watched by an escort. However, this policy was not followed because Mary was assaulted twice more on school grounds during school hours.

● Nardone decided to impose a mandatory tardy policy in regard to Mary and "Mad Dog." If either student went to class late they were to be sent directly to the office. Because the second assault occurred on January 12 during sixth period and neither students' record reflects a tardy or an absence, the evidence demonstrates that the tardy policy was not enforced.

Appellants created these policies and procedures and decided that they would be effective immediately. The policies defined the duties with such precision as to leave nothing to the exercise of Appellants' judgment or discretion. *See Downing*, 935 S.W.2d at 114. However, the summary judgment evidence establishes that three policies were not implemented. Specifically, the elevator door was to be locked and

it was not, the children were to be escorted and they were not, and it was to be reported to the office if the children were late getting to class and there were no such reports. This evidence creates issues of fact that Appellants did not carry out their ministerial duties and Mary's injuries resulted.

### B. Appellants' Affidavits and Deposition Testimony

■ To support their argument regarding immunity under section 22.051, each Appellant submitted an affidavit asserting that at all relevant times: they were professional employees of the Castleberry School District; they had acted within the scope of their professional duties; they had exercised their judgment and discretion; and they did not discipline or punish Mary. Appellees argue that this evidence was insufficient to prove that Appellants' acts were discretionary as a matter of law. We agree.

Because Appellants are interested parties, in order to establish facts through their testimony, the testimony must be uncontroverted and free from contradictions. *See* Tex.R.Civ.P. 166a(c). If the testimony does not meet these requirements it will not support a summary judgment. *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989). Here, Appellants' testimony is not free of contradictions as the following demonstrates.

- Nardone testified that she and Hackett discussed the matter and Hackett assured her that measures were being followed.
- Hackett testified that she did not recall talking to Nardone.
- Hackett testified that Burgett was to talk to the teachers about measures to be taken.
- Burgett testified that Hackett was the one who was to talk to the teachers.
- Hackett and Burgett testified that they contacted Myers and were waiting on Myers to decide what to do with the students.
- Myers testified that Burgett and Hackett were not waiting for any direction from his office regarding the manner in which the situation should be handled.

### C. Appellees' Expert Witness

In response to Appellants' motion for summary judgment, Appellees submitted the affidavit of Dr. Linda Townzen, a highly experienced educator.[2] In her affidavit, Townzen states that in her opinion it was Appellants' duty to ensure that the policies they created were adhered to immediately. Townzen also states that Appellants' failure to follow the policies resulted in the subsequent sexual assaults.

■ Because Appellants contradict one another's testimony and the testimony is controverted by Townzen's affidavit, fact issues remain and summary judgment is

**2.** Townzen is a qualified expert because she holds a Master's Degree in Special Education and a Doctorate in Educational Administration. She is licenced as a special education diagnostician, an administrator, and a superintendent. Townzen has thirty-one years experience working in the special education area. She has acted as a diagnostician, a special education teacher, principal, and district wide supervisor and administrator for special education services. She has worked for over seven years as the coordinator of all special education services for the Arlington Independent School System, which included the supervision of 435 teachers. In addition, she has taught in the area of education at the university level since 1996. Her university level courses include the legal liability of school employees, and she is currently teaching students to be principals at the University of Texas at Arlington.

**398**

not proper. *See Casso,* 776 S.W.2d at 558. Furthermore, the statement in each of Appellants' affidavits that, "I at all times acted within the scope of my professional duties ... and exercised my judgment and discretion in an effort to protect the rights of all parties" merely asserted a legal conclusion. *See Foster v. Estrada,* 974 S.W.2d 751, 753 (Tex.App.—San Antonio 1998, pet. denied). The affidavits do not demonstrate how or why the disputed actions or omissions should be legally characterized as involving the exercise of judgment or discretion. *See id.* Instead, the statements are self-serving assertions. *See id.* Because each statement merely states a legal conclusion, the affidavits are insufficient to support summary judgment as a matter of law. Accordingly, Appellants failed to meet their burden of establishing immunity under section 22.051. We overrule issue one.[3]

### Conclusion

Having held that Appellants failed to sustain their summary judgment burden, we affirm the trial court's order denying their motions for summary judgment.

DAY, J., dissents without opinion.

---

3. Because we have determined that Appellants failed to establish that their duties involved the exercise of judgment or discretion, we need not address their second issue. *See* Tex.R.App.P. 47.1.