In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-260 CV


______________________


 

BRAD LANE, Appellant



V.



SHARON BIRLINE YOUNG, BRIDGETTE AND 


WILLIAM WRIGHT, AND RITA JOHNSON, Appellees






On Appeal from the 356th District Court 


 Hardin County, Texas 


Trial Cause No. 43994 






MEMORANDUM OPINION


 Brad Lane, a school district superintendent, appeals an order denying his motion for
summary judgment based on immunity. See Tex. Civ. Prac. & Rem. Code Ann §
51.014(a)(5) (Vernon Supp. 2006). Three of the plaintiffs, Bridgette Wright, William
Wright, and Sharon Young, sued Lane for defamation and malicious prosecution, and a
fourth plaintiff, Rita Johnson, sued him for civil conspiracy and tortious interference with her
employment. We reverse the trial court's order and render judgment in Lane's favor based
on statutory immunity. See Tex. Educ. Code Ann. § 22.0511 (Vernon 2006). 

Standard of Review


 Lane filed a traditional motion for summary judgment asserting the affirmative
defense of statutory immunity set out in section 22.0511 of the Education Code. (1) See Tex.
Educ. Code Ann. § 22.0511 (Vernon 2006); Tex. R. Civ. P. 166a(c). He had the burden to
show that no genuine issue of material fact exists and that he was entitled to judgment as a
matter of law. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). As a
defendant, he must conclusively establish each element of his affirmative defense. Science
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997). 

 Section 22.0511(a) exempts a professional employee of a school district from personal
liability "for any act that is incident to or within the scope of the duties of the employee's
position of employment and that involves the exercise of judgment or discretion on the part
of the employee, except in circumstances in which a professional employee uses excessive
force in the discipline of students or negligence resulting in bodily injury to students." (2) Tex.
Educ. Code Ann. § 22.0511(a) (Vernon 2006). As superintendent, Lane was a professional
employee of a school district. See Tex. Educ. Code Ann. § 22.051(a)(1) (Vernon 2006). 
The superintendent's duties, as set out in the Education Code, include the following:

 (1) assuming administrative responsibility and leadership for the planning,
operation, supervision, and evaluation of the education programs, services, and
facilities of the district and for the annual performance appraisal of the
district's staff;

 (2) assuming administrative authority and responsibility for the assignment and
evaluation of all personnel of the district other than the superintendent;

 (3) making recommendations regarding the selection of personnel of the
district other than the superintendent, as provided by section 11.163;

 (4) initiating the termination or suspension of an employee or the nonrenewal
of an employee's term contract;

 (5) managing the day-to-day operations of the district as its administrative
manager;

 (6) preparing and submitting to the board of trustees a proposed budget as
provided by section 44.002;

 (7) preparing recommendations for policies to be adopted by the board of
trustees and overseeing the implementation of adopted policies;

 (8) developing or causing to be developed appropriate administrative
regulations to implement policies established by the board of trustees;

 (9) providing leadership for the attainment of student performance in the
district based on the indicators adopted under section 39.051 and other
indicators adopted by the State Board of Education or the district's board of
trustees;

 (10) organizing the district's central administration; and

 (11) performing any other duties assigned by action of the board of trustees. 


Tex. Educ. Code Ann. § 11.201(d)(Vernon 2006).


Background


 Both parties presented summary judgment evidence. Deposition testimony and
documentary evidence reveal that in its December 2001 meeting, the Board of Trustees of
the West Hardin Consolidated Independent School District voted to accept a $50,000 gift to
be used for a scholarship in memory of Zach Wright, the deceased son of William and
Bridgette Wright. William Wright, the Board's president, and Sharon Young, the District's
business manager, attended the December 2001 Board meeting. Brad Lane, who did not
become superintendent until July 1, 2002, was not present at the meeting. His primary basis
for knowing what occurred at the Board meeting is the minutes. In deposition testimony,
Wright and Young indicated the Board voted not only to accept the $50,000 scholarship
money at that meeting, but also authorized a trust agreement (3) for the funds and the transfer
of the money to the Wrights' account. The official minutes of the meeting state, "Bill Wright
entertained a motion to consider the transfer of Zac Wright Memorial Scholarship Trust Fund
to West Hardin. . . . Motion carried." There is no written record of any motion or action to
transfer the funds out of the District to the Wrights' account or any approval of such a
transfer. Although the Board meetings are normally tape-recorded, six months of the tapes,
including this one, are missing. (4) On May 21, 2002, a $50,000 check for the scholarship fund
was deposited into the District's account at Hull State Bank, and on that same day the
$50,000 was transferred out of the school district's account into a private account at the Bank
under the Wrights' name. Sharon Young authorized the money transfer after she asked Dan
Doyen, acting superintendent, for permission to do so. Doyen gave his permission for the
transfer. 

 Responding to a Board member's request to investigate the matter, (5) and being
concerned about the apparent lack of written authorization for the money transfer, Lane
conducted an investigation. He testified he reviewed the minutes of the December 2001
Board meeting and found the "documentation lacking" for transfer of the $50,000 to a private
account out of the District's account. Lane testified four board members who attended that
meeting contacted him and told him they did not vote to transfer the money out of the
District's account. Lane also talked to Sharon Young, the District's business manager, and
to Rita Johnson, employee at Hull State Bank. He discovered a family foundation was the
source of the money deposited into the District's account. Lane indicated "alarm bells" went
off for him when he discovered the deposit and subsequent transfer. With no written
documentation approving the transfer, Lane called legal counsel at the Texas Association of
School Boards and financial legal counsel of the Texas Education Agency. Both men told
him that once the District accepted the money, the Board then needed to approve any transfer. 
Lane explained he took the written material gathered in his investigation to the school's
attorney. 

 Lane testified law enforcement officials contacted him about the scholarship funds,
and Wright testified the Board instructed Lane to contact the Sheriff's Department. The
record shows Lane did not on his own initiative contact the authorities. He explained that
someone from the District Attorney's office wanted information, but Lane refused to comply
with the request until he received a summons. Wright testified the school board directed
Lane to turn the matter over to the Sheriff's Department for investigation. 

 In her deposition, Sharon Young testified she and Lane had a meeting; Wilt
Alexander, a school principal in the District, was present. Young testified Lane told her she
would be terminated because of the $50,000 theft and although she "could receive up to 10
years for this," Lane believed he could convince the Board to forego prosecution if she would
resign. Alexander testified he only remembered Lane's comments as giving Young the
option of resignation or termination. At the Board meeting, Lane suggested the business
manager be allowed to resign. Lane testified the Board did not vote on the issue, because
Young was an at-will employee, and, as the Superintendent, he had the discretion to fire her. 
Young resigned. 

 Excerpts from Rita Johnson's deposition were also in evidence. On September 16,
2002, as part of his on-going investigation, Lane called the Bank and spoke with Rita
Johnson, an employee of the Bank. Johnson explained to Lane how the $50,000 had been
transferred to the Wrights' account. In her deposition, she acknowledged she violated the
Bank's confidentiality policy in the conversation with Lane. Johnson testified Henry
Gilfillian, Sr., the Bank's president, called her in for a meeting. She described a conversation
Gilfillian had with Lane in which Lane said Rita had given out too much information and that
Lane could not entrust the school's money to a bank where people talked as much as
Johnson. Johnson indicated that Gilfillian told her Lane in effect had threatened to take the
District's money elsewhere and that Gilfillian said her employment with the Bank was not
as important as the school district's money. Gilfillian then terminated her employment.

 Also included as summary judgment evidence is a copy of the District rule on "Grants
From Private Sources." The rule states the "Board may accept any bequest or gift of money
or property on behalf of the District. The gift shall become the sole property of the District
for its use and disposition." Appellees assert the money was not the District's property. 

 The record also contains the District's 2002 audit which includes a "Schedule of
Findings and Questioned Costs" set out in part below: 

 During the December Board meeting, a motion carried to consider the transfer
of a Memorial Scholarship Fund to the District. On May 21, 2002, a deposit
was made into the general fund in the amount of $50,000. On that same day
$50,000 was transferred to a Memorial Scholarship Fund, which was a bank
account not controlled by the District."


The audit then stated the "transfer was made without appropriate written documentation." 
As Young explained, the auditor "flagged" the account. 

Arguments


 Appellees assert the Board never "tasked" Lane to do an investigation; the scholarship
money did not belong to the District; the Board voted to accept the funds and to transfer them
out of the District's account at the December 2001 meeting; there is no evidence Lane was
a professional school employee; Lane accused the Wrights and Young of theft; and Lane
initiated the contact with the sheriff's department. Lane argues his investigation fell within
his duties as superintendent, and he is entitled to immunity under section 22.0511(a) of the
Education Code.

Analysis


 To establish immunity under section 22.0511, Lane must conclusively establish his
conduct was "incident to or within the scope of [his] duties" as superintendent. Whether an
employee is acting within the scope of his employment is dependent on whether the general
act from which the alleged injury arose was in furtherance of the employer's business and
the objective for which the employee was employed. See Kobza v. Kutac, 109 S.W.3d 89,
94 (Tex. App.--Austin 2003, pet. denied) (citing Chesshir v. Sharp, 19 S.W.3d 502, 505
(Tex. App.--Amarillo 2000, no pet.)); Perry v. Greanias, 95 S.W.3d 683, 698 (Tex. App. --
Houston [1st Dist.] 2002, pet. denied); Gonzalez v. Ison-Newsome, 68 S.W.3d 2, 5 (Tex.
App. -- Dallas 1999) pet. dism'd w.o.j., 73 S.W.3d 178 (Tex. 2001)) (citing Houston Transit
Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880,881 (1948)). 

 A superintendent's investigation (6) of the transfer of money out of the District's account
into a private bank account, without apparent Board authorization, falls within a
superintendent's duties under Tex. Educ. Code Ann. § 11.201(d)(5),(7), (11). As
"administrative manager," he was charged by statute with managing the District's day-to-day
operations. See id., § 11.201(d)(5). When the superintendent pursued the investigation to
the Bank which holds the District's account and which transfered, through its employee,
money out of the District's account into a private account, the superintendent did not stray
from his statutorily prescribed duties. In investigating the source of the funds, their
whereabouts, the events surrounding the transfer, the authority for the transfer, and the
Bank's handling of the District's account, Lane was acting within his general authority in
furtherance of the District's business, and he was seeking to accomplish an objective for
which he was employed -- namely the daily administration of the District. (7) When Lane met
with Sharon Young in the presence of a witness to discuss Young's employment and
termination, he was also acting "incident to or within the scope of his duties." See Tex.
Educ. Code Ann. § 22.051(a)(2). Speaking to the Bank's president about a Bank employee
who gave out confidential information regarding accounts at the Bank, at which the District
had its account -- even if that conversation involved Lane's questioning the person's
continued employment at the Bank -- was "incident to or within the scope of the
[superintendent's] duties." Lane conclusively established, as a matter of law, that he acted
within the scope of the duties of his employment. See Chesshir, 19 S.W.3d 506. 

Discretion
 

 Lane argues his conduct involved "the exercise of judgment or discretion. " See Tex.
Educ. Code Ann. § 22.0511(a). In the immunity context, a distinction is made between
discretionary and ministerial acts. See Downing v. Brown, 935 S.W.2d 112, 114 (Tex. 1996). 
"Ministerial acts are those '[w]here the law prescribes and defines the duties to be performed
with such precision and certainty as to leave nothing to the exercise of discretion or
judgment.'" Id. (quoting City of Lancaster v. Chambers, 883 S.W.2d 650, 654 (Tex. 1994)). 

An action involving personal deliberation, decision, and judgment is discretionary. Downing,
935 S.W.2d at 114; Kobza, 109 S.W.3d at 95 (citing Downing v. Brown, 935 S.W.2d 112,
114 (Tex. 1996)). If the actor is entitled to personally deliberate about the manner or means 

of performance and invoke his own judgment, then the act is discretionary. Kobza, 109
S.W.3d at 95. The statute placed on Lane the duty to manage the day-to-day operations of
the District, but it does not specify how this duty was to be performed, nor does it define his
responsibility with such precision as to leave nothing to Lane's exercise of judgment or
discretion. The broad category of responsibility which Lane pursued was the investigation
of a transfer of school funds into a private account. Inherently, an investigation involves the
exercise of personal judgment and personal deliberation -- including the initial decision to
investigate, the methods of investigation, persons to investigate, and employment and
banking decisions flowing from the results of the investigation. The focus is not on what
Lane said, to whom he spoke, or whom he decided to investigate, but on his exercise of
judgment and discretion in pursing the investigation. See generally Deaver v. Bridges, 47
S.W.3d 549, 556 (Tex. App.--San Antonio 2000, no pet.). The decision to conduct an
investigation and the investigation itself are not acts so precisely defined by law as to leave
nothing to the exercise of the superintendent's judgment or discretion. 

 Lane conclusively established the statutory immunity defense under the Education
Code. We reverse the order of the trial court and render judgment that plaintiffs take nothing
from Lane. 

 REVERSED AND RENDERED. 


 

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on November 2, 2006

Opinion Delivered January 11, 2007 


Before Gaultney, Kreger, and Horton, J.J.
1. Lane also asserted common-law immunity. 
2. There is no allegation relating to the exception in section 22.0511(a). 
3. The trust agreement is dated May 1, 2002, some five months after the December 2001
Board meeting. 
4. Appellees argue the evidence of missing tapes should be viewed in their favor. The
fact that six months of tapes are missing, not just the single tape of the December 2001
meeting, does not warrant a presumption. Lane did not become superintendent until six
months after that Board meeting. 
5. The record establishes the deposit and transfer of the $50,000 occurred before Lane
became superintendent. He could not remember if the request to investigate was made while
he was a consultant or after he became superintendent. 
6. The Board's approval of the establishment of this scholorship fund, the deposit of the
money into the District's account, and the transfer of the money into the Wrights' account
all occurred before Lane became superintendent. As we understand appellees' petition, the
alleged defamation, conspiracy, and tortious interference conduct occurred after Lane's July
1, 2002, employment as superintendent. As to the malicious prosecution claim, Lane
acknowledged a Board member requested in June or July 2002 that Lane "check into a
$50,000-dollar scholarship." The record demonstrates the conduct alleged to be tortious
occurred during his employment as superintendent. 
7. Even without a prior request, the superintendent's investigation into whether the
funds at issue were invested in accordance with applicable statutes would fall within the
scope of the duties. See Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 45.107, 1995
Tex. Gen. Laws 2207, 2440 (amended 2003) (current version at Tex. Educ. Code Ann. §
45.107 (Vernon 2006)); see also Act of May 27, 1983, 68th Leg., R.S., ch. 567, art. 2, § 2,
sec. 113.056, 1983 Tex. Gen. Laws 3269, 3356-57 (amended 1985, 1991, 2003) (current
version at Tex. Prop. Code Ann. § 113.056 (Vernon Supp. 2006)). See also Tex. Educ.
Code Ann. § 45.105 (Vernon 2006), Tex. Educ. Code Ann. § 45.107 (Vernon 2006), and
Tex. Prop. Code Ann. § 117.004 (Vernon Supp. 2006).